PLANTERS' & MERCHANTS' BANK OF MOBILE v. BORLAND.

1. An issue for the trial of the right of property, under the act of 1812, [Aik. Dig. 167] is a suit at law, within the meaning of the 21st rule of practice in chancery, [1 Stewart's Rep. 618,] and the plaintiff in execution is bound, on the suggestion and affidavit of the claimant, to. elect between the dismission of such case, and a bill in chancery for the same claim or demand.

2. The objects of the rule were to diminish litigation, and lessen its expense, and the claimant may, at the earliest moment after the two suits in law and chancery are commenced, for the same claim or demand, make his suggestion, and call for the election of the plaintiff.

3. The powers of the courts of law and chancery are concurrent, over such applications—and the tribunal first applied to may act.

4. A deed, or conveyance, for the absolute sale of property, which is fair upon its face, cannot be excluded from the jury, notwithstanding there may be facts in evidence, which might shew it to be fraudulent in legal contemplation: when the evidence of fraud is not disclosed by the deed itself, but furnished by parol evidence in connection with it, it becomes a mixed question of law and fact, and a jury must interpose.

5. Payment of drafts, or checks, and in some cases, payment of judgments or executions, may be proved by parol evidence, without producing such written or record evidence, or accounting for its absence—the necessity of producing such evidence, exists when the deed, agreement, &c., form part of the issue, or become material to the issue.

6. On the trial of an issue, whether certain property levied on by an execution in favor of P. M. B, v. J. H. W, it is not material whether J. H. W, was principal, or security in the note, on which the judgment is founded, he being equally liable to the plaintiff in the execution, whether he was one or the other, and evidence to prove his securityship may be rejected.

7. As a general rule, a witness can only depose to facts *within his own knowledge* and he cannot be permitted to speak of the *intentions* or *thoughts* of another, either positively, or as to his own opinion or belief.

8. Where a sale of personal property is absolute, and possession remains with the vendor, and there is no proof of circumstances to explain why possession did not accompany and follow the sale, the vendor being insolvent, in legal contemplation, the evidence of fraud is conclusive.

ERROR to the Circuit Court of Lowndes.

The Planters' and Merchants' Bank of Mobile, having some time before obtained a judgment against George Walker, Robert

Lowe and John H. Walker, for $6,464 10-100, caused an execution to be levied by the sheriff of Lowndes county, on a large number of slaves, as the property of said John H. Walker, about the 15th June, 1842. Abram Borland filed his affidavit, claiming said slaves, as his property, and gave his bond with security, for the trial of the right thereof, conformably to the statute, in such cases made and provided. An issue was afterwards made between the plaintiff in execution and said claimant, which came on for trial before the circuit court of Lowndes county, at its spring term, 1843.

Before the trial of said issue, the record shows the parties appeared by their attorneys, and the claimant suggested to the court on affidavit filed, that this suit, by plaintiff, is for the same claim or demand, to recover which, the said plaintiff has filed a bill in the chancery court of said county against the claimant and others, and moved the court to inspect the records in this cause, and the bill filed as aforesaid; and it having appeared to the satisfaction of the court, after inspecting the records in the said courts of law and chancery, that the matters embraced and involved in this suit, are also, amongst other matters and claims, embraced and involved in the suit in chancery. It was ordered that said plaintiff elect, in which suit he will proceed, and that he dismiss the other, so far only as the matters embraced and involved in this suit, are involved in the suit in chancery. This order of the court was resisted, on the following grounds; that this was not the kind of case, between which and a suit in chancery the rule applied as the claimant by filing his affidavit, bond, &c., brought on the controversy, against the wishes of the plaintiff in execution; that the suits were for objects essentially different, as well as the parties, and interests sought to be reached; that the defendants had not answered the bill in chancery; and that the claimant ought first to answer whether he would go to trial. By agreement of the parties, the bill alluded to has been brought up with the record in this case, for the inspection and consideration of the court. Under the direction of the court, the plaintiff then dismissed his bill, so far only as the matters embraced in this case are involved in the chancery cause.

In the progress of the trial, various questions arose, which are disclosed by a bill of exceptions, then tendered and signed and sealed. It appears the plaintiff introduced evidence to show that

during the years 1839, 1840, and 1841, as well as before and since, John H. Walker, the defendant in execution, and the son-in-law of the claimant, (who claims the property levied on under a purchase from said Walker) remained in the uninterrupted possession and control of the slaves in controversy, and the plantation, on which they were employed—and, during that time, was the only visible possessor of said slaves, and exercised all the usual acts of ownership over them. The plaintiff also introduced evidence, that the claimant in the spring of 1842, requested the witness to go with him and see him receive possession of the slaves in controversy, which, he said he had purchased of John H. Walker, the defendant in execution; which witness declined doing. The plaintiff also proved the separate value of the several negroes, levied on; that John H. Walker, the defendant in execution was insolvent, and that there were unsatisfied judgments against him to a large amount.

The claimant then proved by the subscribing witness, that the claimant, Borland, and John H. Walker had acknowledged before him their signatures to an instrument of writing, which was offered as evidence to prove the claimant's title to the slaves therein mentioned, of which instrument, with the P. S., and endorsements thereon, the following is a copy:

"Contract between A. Borland and John H. Walker, both of Lowndes county, Ala. John H. Walker, has this day sold to Abram Borland, his tract of land in the county of Dallas and Lowndes, consisting of about five hundred and ninety acres, more or less; also, all his negroes, say sixty-eight in number, little and big; and his stock of horses, hogs and cattle, household furniture, pleasure carriage and plantation tools, and the growing crop of the present year, for and in consideration of the sum of thirty-seven thousand dollars, to be paid in the following manner, viz: the said Borland is to pay, or cause to be paid, to the Branch of the Bank of the State of Alabama at Montgomery, all the notes, bills and judgments, said Bank holds against said Walker as principal, amounting to about fifteen thousand dollars, with interest from June, 1838. He is also to pay to Messrs. Bull & Files the sum of three thousand dollars, which they have advanced or accepted for said Walker, out of the growing crop now on said land or plantation. He is also to pay to James B. Robinson, the overseer on the plantation, the sum of five hundred dollars, and

the sum of five hundred dollars to Mr. Claughton and King, who worked for said Walker this spring, and hold h's notes for the amount, and the balance of the purchase money to be divided into equal instalments: that is to say, said Borland is to give his notes in the following manner—a note for twenty-two hundred dollars, payable on the first of March, 1847, one for twenty-two hundred dollars, payable on the first of March. 1848, and another for twenty-two hundred dollars, payable on the first of March, 1849, and one other for the sum of twenty-two hundred dollars, payable on the first of March, 1850, and another note for twenty-two hundred dollars, payable on the first of March 1851.

Signed, ·       ·       J. H. WALKER,

ABRAM BORLAND, sen'r.

Signed in the presence of

J. B. ·MAY

P. S.—And another note payable on the first of March, 1852, for two thousand dollars, this 27th day of Sept. 1840—not signed, and then follows a list of the negroes, except some children, whose names are not given."

The plaintiff's counsel moved to exclude said instrument from the jury, on the ground, that under the evidence introduced by the plaintiff, and then before the court, including the record of the plaintiff's judgment, issuance and returns of executions under it, it sufficiently appeared that this was a pre-existing debt; that the vendor, Walker, was then in failing, or insolvent circumstances, and that being in such situation, such a conveyance by him as that above set-forth, from the long time-of credit given, and other indications accompanying it, was, on its face, fraudulent and void, as against creditors. This motion was overruled by the court.

The plaintiff, also moved to exclude from the jury, the deposition of Bull & Files, which went to prove, amongst other matters, that they had, at claimant's request, paid certain drafts and acceptances against said John H. Walker, *said drafts and acceptances not being introduced nor exhibited, nor their absence accounted for.*

The claimant having offered the evidence of one Branch, a constable, to prove payment of a certain sum of money by the claimant on some judicial process, against said John H. Walker, the plaintiff moved to exclude it, *on the ground of immateriality,*

and *the process not being introduced*—but was overruled by the court.

In like manner, the plaintiff moved on the ground of irrelevancy, to exclude the evidence of one May, a deputy sheriff, who swore he levied an execution on the property of said John·H. Walker, that the entries made thereon were correct, and the execution was offered to the jury to prove·it operated as a lien on said Walker's property; but was overruled by the court.

The plaintiff also moved to exclude· another execution, on the same ground, in favor of one Gilchrist against said Walker, accompanied by evidence, that it too, was a lien on his property— but was overruled.

George Walker, another defendant in said execution, was introduced as a witness, by the claimant; on cross-examination, the plaintiff called on him to state whether, notwithstanding he and John H. Walker purported to be securities in the note on which this judgment is founded, for J. B. Wilkins, said Wilkins had not, by agreement between them, transferred some ten negroes, and notes to the amount of about $20,000, to meet this and other debts, and if part of the money and proceeds, and how much had been realized—the avowed object being to show, that said J. H. Walker had in fact become a principal in the debt, and evidence having previously transpired, on the the trial, tending to show, that claimant had agreed in said contract with said John H. Walker, to pay all his debts, as the consideration of said purchase. This evidence was objected to, and excluded.

The plaintiff also moved to exclude the evidence of J. B. Wilkins, who was introduced by claimant, to prove that claimant had paid a certain debt for said J. H. Walker, *on the ground that it was a judgment debt*, on which he, Wilkins stood as principal, and said Walker and others, securities, but the court refused to exclude the evidence.

The claimant having introduced several witnesses tending to prove that he had paid for the slaves purchased under said contract, by assumptions of said John H. Walker's debts—the plaintiff offered to prove, that at the time claimant assumed 'a certain debt to one Stewart for said Walker, he, the claimant was indebted to the said Walker in a much larger amount, because that said witnesses' means, he having been principal in the debt, had, by arrangement with said Walker, been placed in the hands of

said Walker to pay, or arrange this debt—these facts were pro-
posed to be proved, as circumstantial evidence, that Borland
had already, and without the conveyance of said negroes,
been compensated for the assumption of said Walker's debts—
also, to prove by said witness, that Borland's assumptions of said
Walker's debts were voluntary; but said evidence was excluded
by the court.

Claimant then called on said Walker to testify, and asked him
if, in the said contract between himself and said claimant, they
intended to defraud the creditors of said Walker—to the admis-
sion of which evidence, the plaintiff objected, but was overruled
by the court, and the witness permitted to say, "no fraud was
intended in said contract—that such a thing was never thought
of by either." Yet said witness admitted, that at the time of
making said contract, he was insolvent, and debtor to the amount
of $80,000—$15,000 or $20,000 of which was then in judgment;
that he sold his property to avoid its sacrifice under execution;
all which was excepted to.

By an agreement in writing, signed by the counsel for the
plaintiff and defendant in error, to be taken as part of the record
in this case, it is admitted that the claimant introduced evidence,
tending to prove, that after the purchase, he had paid the over-
seers in charge of the property, in 1840 and 1841.

That the testimony of Bull & Files, contained no further de-
scription of the debts paid by claimant, than that they were drafts
and acceptances by them for said Walker, and paid by the claim-
ant.

That the testimony of W. S. May was introduced to shew,
that five of the negroes bought by claimant, were sold by him as
deputy sheriff under the executions, and that Borland had paid
part, and how much, on said executions; and the same as to the
executions of Gilchrist.

That claimant also offered evidence, to prove, that he had set-
tled, in money, by his notes, or otherwise, all the debts mentioned
in the contract of purchase to be paid by him—and that he had
settled or assumed in writing, other debts to a considerable
amount, part in money, and part in notes transferred, or substitu-
ted by him, and part by giving his own notes—*that the debts
thus discharged, were discharged by the directions of Walker.*
Walker testified that he sold the property to Borland, because he

thereby secured the payment of $37,000 of his debts, when, if the property had been sold by the sheriff, it would have been sacrificed, and would not more than have paid the judgments against him, and that he did not communicate to Borland the existence of the unsatisfied judgments and executions.

That there was evidence tending to prove, that the price agreed by the contract of purchase, to be paid, was more than the value of the property bought; and there was no evidence that Walker had ever received any portion of the purchase money, except as shown above.

And that there was no evidence of any other contract ever having been made between claimant and Walker, for or concerning the slaves levied on, than that stipulated in the written contract, herein before stated.

Before the jury retired, the plaintiff's counsel requested the court to charge them, that if, under the terms of the written contract, between said claimant and said John H. Walker, there was no change of the possession of the property, and if no special circumstances were proved, to explain why the possession did not accompany and follow the sale, and the said vendor was then insolvent—" then the failure to transfer the possession was conclusive evidence of fraud," as against the plaintiff in the execution, and the property liable to condemnation.

The court refused so to instruct, but charged the jury, "that the above was a circumstance only, from which the jury might infer fraud, unless there were other circumstances in evidence, which, in their opinion, were sufficient to outweigh this presumption, in which latter event, they should not so regard them."

The plaintiff's counsel then requested the court to charge the jury, that the long credits given in this case, in connection with the discrepancy, as to the amount of the price, contracted to be given; and the other indications of fraud, apparent on the face of the contract, in addition to the circumstances referred to, in the instructions as above requested, were sufficient of themselves, to render said contract frudulent and void in law, as against the plaintiff—inasmuch as the parties must be presumed to intend that, which must inevitably result from their acts; which instructions were refused, and plaintiff's counsel excepted.

The jury found a verdict for the claimant, and the court rendered a judgment accordingly—to reverse which, this writ of

error was prosecuted, and the plaintiff now assigns the following errors:

Planters' and Merchants' Bank of Mobile, pl'ff in ex'n, vs. Abram Borland, claimant. } Sup. Court, June Term, 1843. The plaintiff in error, comes and says, that in the record and proceedings in this case there is manifest error, and for causes assigns the following :

1. The court below erred in requiring and ordering the plaintiff in error, on motion of defendant, to elect between this case, and the suit in chancery alluded to, and disclosed by the transcript of the record, in which said plaintiff would proceed, and to dismiss the other; and in the time and manner of ordering and compelling the election to be made as shewn by the record.

2. The court erred in not excluding from the jury, the paper purporting to be a contract or conveyance of the property, real and personal, of John H. Walker, one of the defendants in execution, to the defendant in error, signed by each of them, and bearing date, 27th September, 1840, and attested by J. B. May, as shewn by the bill of exceptions.

3. The court erred, in admitting as evidence, the depositions of Bull & Files; and also in admitting the evidence of the witness Branch, under the circumstances, and after objections by the plaintiff as stated and shewn in the bill of exceptions.

4. The court erred in overruling the objection of the plaintiff to the admissibility of the evidence offered, of the witness May, relating to executions and the liens thereby created on the property of John H. Walker, defendant in execution, under the circumstances, and as stated in the bill of exceptions.

5. The court erred in excluding the evidence of George Walker, which the plaintiff offered to elicit on cross-examination, after said Walker had been introduced and examined on the part of the defendant, as stated and explained in the bill of exceptions.

6. The court erred in refusing to exclude the oral evidence of the witness J. B. Wilkins from the jury, which related to the payment of a judgment, and in the absence of any higher evidence of the existence of such debt, or the fact of the payment having been made.

7. The court erred in rejecting the evidence proposed to be introduced by the plaintiff on cross-examination of the defendant's

witnesses, with a view to shew, that defendant had been compensated for certain payments by him of John H. Walker's debts to Stewart and others; and this after defendant had introduced evidence of the same witnesses, tending to prove that·he had paid for the slaves in contest, by assumptions to pay the same debts, as shewn by the bill of exceptions.

8. The court erred in admitting the evidence of John H. Walker, defendant in execution, at the instance of defendant in error, stating by general assertion, that no fraud was intended in the contract of sale of said slaves, between himself and said claimant—that such a thing was never thought of by either, &c., as stated in the bill of exceptions.

9. The court erred in refusing to instruct the jury, as requested, by the plaintiff in the first instructions moved, and in the contrary instructions given, as stated in the bill of exceptions.

10. The court erred in refusing to instruct the jury as requested in the second instructions, moved by the plaintiff, as stated and shown by the bill of exceptions.

R. Saffold and Geo. W. Gayle, for the plaintiff in error.
Williams and Elmore, *contra.*

CLAY, J.—1. The first question presented by the assignment of errors is, whether the circuit court erred in requiring the plaintiff in the execution to elect between the further prosecution of this case, and a bill in chancery, which involved the question of title to the same property? The answer to this question depends, mainly, upon our own rule, applicable to the subject, and the practice which has prevailed under it. The rule is in these words:

" Where a suit at law and a bill in chancery are instituted for the same claim or demand, the defendant, on suggestion, supported by affidavit, may move the court to inspect the records; and, if it appear that the two suits are for one and the same cause of action, it shall be ordered that the plaintiff elect in which he will proceed, and that he dismiss the other."

In opposition to the enforcement of this rule, by the court below, it was insisted, that this was not the kind of case at law, contemplated in the adoption of the rule—that it was not an action, originally, brought by the plaintiff, to recover the property in controversy—but that the issue had been forced upon him by

the claimant. It is true, this is not a common law action to recover the property—but the plaintiff, by causing his execution to be levied on it, as effectually asserts that he is entitled to its value, under the claim, created by his judgment, as he could have done by bringing an ordinary action at law. The claimant comes in, and denies the plaintiff's right to the property, to satisfy his execution—and, under our statute, an issue is required to be made up between the parties, which as effectually tries the title, as it could be tried in an action of trover, or detinue. The proceeding on the part of the plaintiff may be regarded as a *statutory* action, in which the leading process is the execution—the levy being made, and affidavit and bond being filed by the claimant, the " court shall require the parties concerned, to make up an issue, under such rules as they may adopt, *so as to try the right of property before a jury at the same term*, &c." We, then consider the proceeding in the court below as " a suit at law," within the fair interpretation of the rule.

So far as regards the proper " suggestion, supported by affidavit," that the suit at law and the suit in chancery were " instituted for the same claim or demand," there is no room for controversy. The court below inspected the records and so determined—and the bill filed by the plaintiff in chancery, does seek to set aside a conveyance between the same parties, for the same consideration, for the same number of slaves, and the same description of other property, which is embraced in the contract, the validity of which was brought in question by the issue at law—and each proceeding is the same, as to the subjection of the property to the satisfaction of the plaintiff's demand. It is true, that other objects, and other parties are embraced by the bill in chancery—but so far as concerns the property levied on, the object to be attained, and the parties interested, are the same, and no other rights, or interests can be affected by the order of election, for the court below required the dismission of the suit in chancery, " so far only as the matters embraced and involved in this suit, are involved in the suit in chancery."

The objects of the rule under consideration were to diminish litigation, and lessen the costs and expenses incident to it, by declaring that the same claim or demand, should not be, at the same time, the subject of a suit at law, and another in chancery. Regarding these considerations, and the language of the rule, that

the election *shall* be ordered " where a suit at law, and a bill in chancery are *instituted* for the same claim or demand"—it cannot be doubted that the defendant may, at the earliest moment, after the two suits are commenced *for the same claim or demand*, make his suggestion; and that the powers of the courts of law and chancery, over such applications, are concurrent, to be exercised by that tribunal, before which the suggestion of the identity of the claim, or demand sued for in the two jurisdictions, shall be first made. In the case of Doe, *ex dem.* Duval's heirs v. McLoskey, [1 Ala. Rep. N. S. 708,] this rule came under revision, and although the precise point, raised here, was not presented in that case, it is believed the construction now given it, is in perfect harmony with the views then expressed.

2. The claimant having introduced as evidence, a contract in writing, between himself and John H. Walker, purporting to be an absolute sale, by the latter to the former, of about 590 acres of land, " all his (said Walker's) negroes, say 68 in number, little and big, and his stock of horses, hogs, cattle, household furniture, pleasure carriage and plantation tools, and the growing crop of of the current year," in consideration of $37,000, about $15,000 of which were to be paid to the branch bank at Montgomery, $3,000 to Bull & Files; about $1000 more to different individuals, and the balance by annual instalments of $2200 each, the first payable on the 1st of March 1847, and the balance payable annually thereafter, extending to March 1852, the plaintiff moved the court to exclude this contract from the jury, on the ground, that under the evidence introduced by the plaintiff, and then before the court, including the record of the plaintiff's judgment and issuance and returns of executions under it, it sufficiently appeared that this was a pre-existing debt—that the vendor, Walker, was then in failing circumstances, and that being in such situation, such a conveyance by him as that above set forth, from the long time of credit given, and other indications accompanying it, was, on its face, fraudulent and void, as against creditors. This motion was overruled by the court, and that opinion is the ground of the plaintiff's second assignment of error.

There is no question, that the facts being fully ascertained, fraud is a question of law. It was so held by this court in the case of Swift v. Fitzhugh, [9 Porter, 67.] The court then said, " fraud is a question of law, though from the manner in which

cases·are usually presented in court, it must, in general, be left to the jury to determine. But when the facts are clear and undisputed, the question of fraud, or not, is a pure question of law." [1 Bur. Rep. 395; 9 Johns. Rep 337.] In the case of Ashurst v. Martin, [9 Porter 571,] this court said: "It is settled beyond controversy, that a debtor in failing circumstances, may convey all his property, in trust to be equally divided amongst his creditors, if the property be fairly and honestly devoted to this purpose, untramelled by onerous conditions upon the creditor, and without stipulating for any pecuniary benefit to himself, as the consideration on which the creditor shall be allowed to participate in the assignment." In the same case, [p. 572,] it was further held "as well settled, that the debtor may give a preference to particular creditors, and declare that such may be paid their entire demand, &c." And we may lay it down as equally unquestionable, that if a man think proper, he may sell his entire estate, real and personal, at the same time, and to one individual; and such a contract, on its face, would not, necessarily, be fraudulent. Apply these principles to the contract before us, and on its face, it purports to be an absolute sale of a certain quantity of land, all the grantor's slaves, his horses, hogs and cattle, household furniture, pleasure carriage, plantation tools, and growing crop, for a certain consideration, which, if not fully adequate, is certainly not revolting for its inadequacy—and directs certain debts to the Montgomery branch bank, and·to certain individuals to be paid, the balance to be secured by notes, payable to himself, for certain sums annually. The contract does not show that the grantor owes any other debts, consequently, there is nothing to render it improper, that the balance of the consideration money should be paid to himself. On its face, it is a plain bargain and sale of property; and as regards land, and some other descriptions of property, it does not appear to be all the grantor owned—nor does it show, of itself, that the interest of any one, was either injured, or intended to be injured; consequently there is nothing in the contract itself, to authorise the conclusion that it was intended to defraud, delay, or hinder creditors. The counsel for the plaintiff, however, relies on the evidence of his judgment and several executions, as proving a pre-existing debt, and the further evidence that the vendor was in failing or insolvent circumstances; and that the long credits given for the purchase money, with the other

circumstances attending the transaction, rendered the contract fraudulent and void, as against creditors, and that the court ought so to have considered it, and have wholly excluded the contract from the jury. But to have pursued such a course, the court must have passed on the *credibility*, as well as the *weight* of the evidence, tending to establish the facts, or conclusions insisted upon; they were not ascertained by the contract, and it was the peculiar province of the jury to determine, whether the testimony was credible, and whether it was sufficient to establish such facts, as in connection with the written contract, to amount to a fraud upon the rights of creditors. Fraud is very often, indeed, most usually a mixed question of law and fact. Such was the case in the present instance, and the court below, did right in overruling the motion to exclude the written contract from the jury.

3. The third assignment of errors charges, that the court below erred in admitting as evidence the deposition of Bull & Files; and also in admitting the evidence of the witness, Branch, under the circumstances, and after objection by the plaintiff.

The deposition of Bull & Files, it will be recollected, was objected to on the ground, that it went to prove that they had, at the claimant's request, paid certain drafts and acceptances against John H. Walker, which drafts and acceptances were not introduced nor exhibited, nor their absence accounted for. So the evidence of Branch, a constable, was offered to prove payment of a certain sum of money by the claimant, on some judicial process against said John H. Walker; and his evidence was moved to to be excluded on the ground of immateriality, and that the process was not produced.

The principle on which this evidence was sought to be excluded, is, that you cannot prove the contents of any written contract, or instrument, by parol evidence, unless it is first proven to have been destroyed, or its absence is satisfactorily accounted for. This rule is doubtless salutary, and should be sustained whenever it applies—but there are many exceptions to it. In 1 Phillips on Evidence, 303, it is laid down that " The general rule, therefore, that the best evidence is to be produced, which the nature of the thing admits, is to be understood as applying to deeds and agreements, which *form part of the issue*, or which *are material to the issue*, &c."

In the case of Waring v. Warren, [1 Johns. Rep. 340,] it ap-

pears, on the trial, one Gilbert, who was a deputy sheriff, was sworn as a witness, and proved, that in 1798, by virtue of an execution, he took the goods, &c. of one Stephen Nocus, and sold them at auction, at which sale the plaintiff below became the purchaser of the goods, corresponding with the description of those claimed by the plaintiff, and which were specified in a paper produced by the witness. The witness, or sheriff, made a copy from the paper, which contained an account of the articles purchased by the plaintiff, and a receipt, which was delivered to the plaintiff. The witness was then asked what were the contents of that paper? The defendant's counsel objected to the evidence, on the ground, that the plaintiff ought to produce the paper itself, or show it to be lost. The objection was overruled by the court, and the witness permitted to give evidence of what the paper contained. The case went to the Supreme Court of New-York, where it was held, it was not necessary to produce the paper; that it was sufficient for the plaintiff to shew, he had purchased the goods at auction; that it was a paper with which the defendant had nothing to do, and which the plaintiff was not bound to produce.

In the case of Keene v. Meade, [3 Peters, 7 and 8,] a witness proved a payment of $250 for the plaintiff, and stated that the defendant made the entry on the plaintiff's rough cash book himself, writing his name at full length. The witness fully proved the payment of the money, but the defendant objected to such parol proof as written evidence of the payment existed and should be produced. Mr. Justice Thompson, in delivering the opinion of the court, remarked, among other things: "This objection we think not well founded. The evidence of the advance made by the defendant himself under the circumstances stated, cannot be considered better evidence, within the sense and meaning of the rule on that subject, than proof of the actual payment." Again, he remarked, "it cannot be laid down as a universal rule, that when written evidence of a fact exists, all parol evidence of the same fact must be excluded. Suppose the defendant had written a letter to the plaintiff, acknowledging the receipt of the money, it certainly could not be pretended, that the production of the letter would be indispensable, and exclude all parol evidence of the advance, and yet it would be written evidence."

In the case of the administrator of Wiggins v. administrator of

Pryor, [3. Porter 430,] this doctrine was fully recognized. In that case a witness in deposing to the payment of the amount of a note, spoke of a receipt having been given. It was objected, that parol evidence of the payment could not be given; that the receipt must be produced, or its absence accounted for. But this court held, that there was no error, and fully recognized the competency of the parol evidence of the payment. [See also, 1 Ala. Rep. N. S. 121.]

It may be further remarked in regard to the competency of the parol testimony, referred to, that it went to establish the mere fact of the payments of money, in the respective cases, and not to prove the contents of the papers *which were not in issue, nor material to the issue* between the parties. This proof of payment too, was in discharge of so much of the consideration agreed to be given for the property—and it was, besides, in evidence, that the debts thus discharged, by the claimant, were so discharged by the directions of Walker, the grantor.

With these views of the principles applicable to the plaintiff's third assignment of errors, it cannot be sustained.

4. The fourth assignment raises an objection to the competency of the evidence of one May, a deputy sheriff, who proved that he had levied an execution on the property of Walker, which he produced, and proved the entries thereon were correct. The execution seems to have been given in evidence to prove a lien on the property of said Walker, but seems to have been unaccompanied by any evidence of payment by the claimant, or any other proof to render it relevant; hence, its materiality cannot be perceived.

5. The fifth assignment refers to a part of the bill of exceptions, which shews, that the counsel for the plaintiff called on George Walker, on his cross-examination, to state, in substance, whether, notwithstanding the witness and John H. Walker purported to be securities only, in the note on which this judgment is founded, for J. B. Wilkins, the said John H. Walker had not, in fact, become the principal debtor, in consequence of the transfer of property, notes, &c., to the amount of about $20,000, to meet this and other debts, under an agreement entered into between said parties.

The court excluded this evidence on the objection of the claimant, and we are unable to perceive its relevancy, or materiality.

It was of no consequence as regarded the liability of John H. Walker, or his property, whether he was originally, or by subsequent agreement, between himself and his co-makers of the note on which the judgment was obtained, a principal or security. As between himself and the plaintiff, he was equally bound, and his property was equally liable to satisfy the execution, whether he was, or had been principal or security.

6. The sixth assignment is predicated on the refusal of the court, to exclude parol evidence, given by J. B. Wilkins, to prove the payment of a certain debt by claimant for said John H. Walker, on the ground that it was a judgment debt, in which Wilkins was principal, and said Walker and others securities. The principles laid down in reference to the third assignment, are equally applicable here—especially in connection with the proof, that all the debts paid by claimant for said John H. Walker, were so discharged by his directions.

7. The seventh assignment refers to a part of the bill of exceptions, which presents no point sufficiently intelligible to be distinctly comprehended.

8. The eighth assignment of error brings in question the opinion of the court, in relation to the testimony of John H. Walker, the grantor of the property, which is the subject of controversy. The question propounded to said Walker was, whether in the contract between himself and said claimant, they intended to defraud the creditors of said Walker? To the admission of such testimony, the plaintiff objected—but the objection was overruled by the court, and the witness was permitted to say to the jury, "no fraud was intended in said contract; that such a thing was never thought of by either."

The general rule certainly is, that a witness can only depose to such *facts* as are *within his own knowledge*, and cannot be supposed to speak upon mere conjecture, or belief, however strong. It is true, there are exceptions, but the evidence in the present case does not fall within any of them. A witness may be permitted to testify to his belief of the identity of a person; or that the hand-writing in question is, or is not, that of a particular individual, provided he has any knowledge of the person or hand-writing. So, on questions of science, skill or trade, or others of a like kind, persons of skill may not only testify as to facts, but are permitted to give their opinions in evidence.

[Greenl. on Ev. 488, '9, § 440.] But, in the evidence admitted by the court, no fact was stated, which, as it regarded the claimant, could possibly be within the knowledge of the witness. The evidence of the witness did not go to *a fact within his knowledge, but to the intention of another man,* which, however strongly he might be justified in *believing* to be as stated, he could not *know;* and the witness testified, not only to the intention, with which the claimant acted, but also, that such a thing as fraud in the transaction, had not been *thought of* by either *the claimant* or himself. We are, therefore, of opinion, that the court erred in overruling the plaintiff's objection to this testimony.

9. The next assignment alleges that the court erred in refusing to instruct the jury, as requested by the plaintiff, in the first instructions moved, and in the contrary instructions given, as stated in the bill of exceptions. On reference to the bill of exceptions, it appears the court was requested to charge the jury, that if, under the terms of the written contract, there was no change of possession, and if no special circumstances were proved, to explain why the possession did not accompany and follow the sale, and the said vendor was then insolvent—then, the failure to transfer the possession was conclusive evidence of fraud, as against the plaintiff in the execution, and the property liable to condemnation.

The court refused so to instruct the jury, but charged them, " that the above was a circumstance only, from which the jury might infer fraud, unless there were circumstances in evidence, which, in their opinion, were sufficient to outweigh this presumption, in which latter event, they should not so regard them."

The case of Hobbs v. Bibb, [2 Stewart 54,] decided by this court, some fourteen years ago, may be considered the leading case, as regards the law of this State, applicable to the question before us. Before that case, the question was unsettled, whether we should be governed by the arbitrary rule laid down by the Supreme Court of the United States, in the case of Hamilton v. Russell, that in the case of an absolute sale, possession remaining with the vendor, should amount to fraud *per se;* or that such possession remaining with the vendor, should only be considered *prima facie* evidence of fraud. In the case cited, however, after a full and careful examination of the English and American authorities, this court came to the conclusion, and adopted the rule,

that possession of personal property remaining with the vendor, after such absolute sale, should be presumptive evidence of fraud, but which presumption might be rebutted, or explained away by circumstances. In the case of Ayres v. Moore, [ib. 336,] which came up for adjudication at the ensuing term, the court below charged the jury, " that if they believed the consideration of the bill of sale was *bona fide,* and that it was recorded within six months after its execution, it was good and valid in law, though the negro remained in the possession of the vendor, J. B. M., previous to that time." This court held the charge to be erroneous, as being founded on two facts, " not sufficient of themselves to constitute title and remove the presumption of fraud, arising from the possession remaining with the vendor." This was saying, in effect, that although the consideration might be perfectly fair, and in good faith, and although the bill of sale might be recorded (which is not required by law)—still, if the possession remain with the vendor, the presumption of fraud attaches—something more must be done to remove that presumption. What is sufficient to effectuate that object? We answer, let it be shewn, as in the case of Hobbs v. Bibb, that the property had been purchased for a fair and full consideration, truly paid; that the negroes remained with the vendor on hire, which was actually paid, and that the transaction was known publicly. Or, let it be shewn that it was impracticable, or extremely inconvenient, at the time of sale, to change the possession—some reasonable excuse, or satisfactory explanation at least, should be shewn, to rebut the legal presumption, that the right of property is with the possession of a personal chattel.

In the case of Blocker, adm'r v. Burrus, [2 Ala. Rep. N. S. 354,] the court below refused to charge, that possession remaining with the vendor, after an absolute sale, amounted to fraud *per se,* but charged the jury, " that if they believed from the evidence, that the transaction was upon fair and sufficient consideration, was *bona fide,* and not intended to hinder or delay creditors," they must find for the vendee. This was saying, in effect, all that was required by the rule, laid down in the case of Hobbs v. Bibb, though not in the same language; it was requiring the sale to have been fair, in good faith, upon adequate consideration, and all this accompanied by evidence, or circumstances, to rebut the presumption of any intention to hinder or delay creditors.

Such evidence, as that alluded to in the last branch of the charge must have been such facts, or circumstances, as would satisfy a candid mind, that there was a reasonable excuse, for not having changed the possession of the property at the time of sale. No further, or more explicit charge was called for by the opposing counsel; the case was brought up, and this court affirmed the judgment of the court below.

The question recurs—was the charge of the court below, in the case at bar, conformable to the principles thus established? The counsel for the plaintiff, adverting to the terms of the written contract, which was for an absolute sale, called on the court to instruct the jury, that, if there was no change of the possession of the property, and if no special circumstances were proved to explain why the possession did not accompany and follow the sale, and if they believed that the vendor was then insolvent, then the failure to transfer the possession was conclusive evidence of fraud as against the plaintiff in the execution. These instructions the court refused to give, and, as we think, in that refusal, erred. We have seen that the mere fact, of property remaininig in the possession of the vendor after an absolute sale, is *prima facie* evidence of fraud—this, of itself, unexplained, would be sufficient to authorise a verdict against the vendee. But, when with the facts of an absolute sale, and of the possession remaining unchanged, we connect the additional assumptions, that there were no circumstances to explain why the possession did not accompany and follow the sale, and that the vendor was insolvent, we must consider *the evidence of fraud conclusive.* It is a well settled principle, that *the facts being ascertained, fraud is a question of law.* Let us, then, test the question, by supposing the above facts ascertained by evidence, that this was an absolute sale; that the possession remained with the vendor; that he was insolvent, and that there were no special circumstances in evidence, to explain why the possession did not accompany and follow the sale: could we hesitate to say, that in legal contemplation, the evidence of fraud was conclusive?' We think not, and therefore conclude, that the court below erred in refusing the instructions requested by the plaintiff.

We deem it unnecessary to go into the remaining questions raised on the bill of exceptions, considering them sufficiently met

by the views already presented on the assignment of error, last noticed.

Let the judgment of the court below be reversed and the cause remanded.

COLLIER, C. J.—I had supposed Blocker v. Burruss, [2 Ala. Rep. 354] was irreconcileable with Ayres v. Moore, and consequently, dissented from the conclusion which my brother attained. According to my understanding of it, it determined that the vendee of personal property might repel the presumption of fraud arising from the retention or possession by the vendor, by showing that the sale was *bona fide*, without any proof of special reasons why the possession did not follow it, and vest in the vendee. But I learn from my brother ORMOND, that such was not the opinion of himself and our late learned associate. However much I might have been disposed to regard Blocker v. Burruss, as authoritative, even as understood by me, I feel it my duty to adopt the exposition of it which has been given in the opinion of the court; and to add, that I am pleased, that the very general terms in which the law was there laid down, has been restricted in the present case, so that neither the bench or bar may be misled in future.