McADAMS *vs.* BEARD & HENDERSON.

[TRIAL OF RIGHT OF PROPERTY IN SLAVES.]

1. *Commencement of action.*—The commencement of a statutory claim suit is not the issue of the execution, nor its levy, but the making of the affidavit and the giving of the bond by the claimant.

2. *Security for costs.*—A trial of the right of property is not within either the letter or the spirit of section 2396 of the Code, which requires security for the costs in actions commenced by or for the use of a non-resident.

3. *Admissibility of declarations as part of res gestæ.*—Where the claimant derives title to the slave in controversy under a purchase from the defendant in execution, their declarations respecting the contract, whether made before or after its consummation, but not constituting a part of the *res gestæ*, are not competent evidence for the claimant.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. NAT. COOK.

THIS was a trial of the right of property in two slaves, between Beard & Henderson, plaintiffs in execution against David Edwards, and James F. McAdams, as claimants. The levy was made on the 3d December,

1855; and the claimant made the statutory affidavit, and gave the required bond, on the 7th January, 1856. After several continuances by both parties, the case was finally called for trial at the fall term, 1858; and the claimant then moved to dismiss the levy, on the ground that the plaintiffs were non-residents, and had failed to give security for the costs. The court allowed the plaintiffs to give security at that time, and then overruled the claimant's motion; to which action he excepted.

On the trial, the plaintiff offered in evidence the deposition of his father, James McAdams, who, in answer to the 5th direct interrogatory, testified as follows : " I did not hear the trade made; *but, on the day it was made, the said David Edwards and James F. McAdams both told me they had made a trade for some negroes, to-wit,*" (describing the slaves in controversy;) "*which slaves, as they told me, the said James F. had bought of the said Edwards for* $1,300. This was on the 5th day of February, 1855. A note was executed by the said James F. to the said Edwards for the purchase-money, and bills of sale were given by Edwards to the said James F.; but no money was paid down, that I know of, or according to their statements to me in the conversation alluded to." On the plaintiff's motion, the court suppressed the italicized portion of this answer; and the claimant excepted.

In answer to the 9th direct interrogatory, the witness testified as follows: " I did not see any money paid upon said note; but, on the 30th August, 1855, the said James F. showed me the note, and *remarked that he had made a rise sufficient to take up that note to Edwards, and had just made the last payment upon it.*" In answer to the 2d cross-interrogatory: "I was not a witness to the contract, and was not present, except in the manner above stated, being in another room. *I heard both of the parties speak of making such a contract, some days before it was said to be made, and in the morning of that day ; and they both told me that day, after I saw them in the room together, talking and writing as above stated, that they had traded ;* and I afterwards saw the bills of sale, as above answered, in the possession of the said James F.; and then, on the 30th August, 1855, the

note mentioned. This is the manner in which I derived my information in regard to the sale. I did not see any money paid by said James F. to Edwards. *Said contract took place, according to the information I got from the parties, on the day I saw them talking together and writing in one room of my house.* I do not recollect any person that was present, unless some of my family were present in passing about the house." And in answer to the 4th cross-interrogatory: "They did not show me the papers on that day, and I did not know, at the time I saw them writing, what papers they were writing; though *I heard them speak of the trade that was on hand about the negroes, in the morning before I saw them engaged in writing,* and some days previous." The italicized portions of each of these answers were suppressed by the court, on motion of the plaintiffs; to which exceptions were reserved by the claimant.

The errors assigned embrace all the rulings of the court below to which exceptions were reserved.

J. F. CLEMENTS, and R. M. WILLIAMSON, for appellant.
BAINE & NESMITH, *contra*.

A. J. WALKER, C. J.—It is certainly indisputable that a trial of the right of property, under our statute, is an action or suit, in which the plaintiff in execution is deemed the actor, and the claimant the defendant.—Jacott v. Hobson, 11 Ala..434; P. & M. Bank of Mobile v. Borland, 5 Ala. 531. Being an *action*, it clearly falls within the purview of the statute exacting security for costs from non-resident plaintiffs before commencing their actions, unless something else than the mere fact of its being an action is requisite to make the statute applicable to the case.

The statute is section 2396 of the Code, and its language is: "All actions commenced by or for the use of a non-resident of this State must be dismissed, on motion, by the court, unless security for the costs be endorsed on the complaint, or lodged with the clerk, previous to the issue of the summons; and the costs which have accrued must be taxed against the attorney directing the

summons to issue." If the letter of the law were followed, it would probably include only actions commenced by a summons with the accompanying complaint, and it would not have included trials of the right of property. But a more latitudinous construction has been put upon it, and that construction is now too well settled to be disturbed. *Ex parte* Robbins, 29 Ala. 71; Shepherd & Gordon v. Spriggs, *ib.* 673; Garrett & Bibb v. Terry, 31 Ala. 678.

The doctrine of those decisions was established through an equitable construction, which sought the spirit and intention of the legislature, at the sacrifice of the strict letter of the law. There are reasons for not so stretching the statute as to include trials of the right of property, which did not apply in those cases. If it can be shown that trials of the right of property are commenced by the act of another than the plaintiff, and without any antecedent notification to him, it would involve the most gross and palpable injustice, to make the failure to give security for the costs a cause for the dismissal of the suit. It would be equivalent to saying to the plaintiff, By the act of another, without notice to you, you are made a plaintiff in a suit; and yet, because you did not anticipate the commencement of the suit, and give security for costs, your suit must be dismissed. Such a law would be kindred in its spirit to the conduct of the Roman emperor, who ensnared his people by writing his laws in small characters, and hanging them on high pillars. A court searching for an *equitable* construction of a statute, could never give it such an effect.

The trial of the right of property, under our statute, is a proceeding altogether *sui generis*. There is no precedent for it known to us in the English law. Hence, there is much disputation in this case as to the precise point at which the action commences. This court has incidentally observed in argument, without having the question before it, that the execution was the leading process of the action. Pl. & M. Bank of Mobile v. Borland, *supra*. This remark was certainly wrong. The issue of the execution cannot be the commencement of a suit. It is not its aim or purpose to inaugurate a suit. In the execution of its

mandate, the sheriff may do that which will become the predicate of a suit in detinue, trover, or trespass, or of a trial of the right of property; but it is not the commencement of any of those actions. It is not known, when the execution issues, that there will be any claim to property levied on; and until the levy, the thing is not done which is the cause of the action. If, therefore, a suit exists from the issue of the execution, we have the absurdity of a suit without a defendant, and in advance of the cause which produces the suit. We would have, too, the equally glaring absurdity of a suit without a pendency in any particular court; for the trial of the right of property is to be had in the county where the levy is made, and the ascertainment of the county, in the circuit court of which the trial is to be had, must, of course, await the levy.

If the execution does not commence the suit, the next inquiry is, whether it is commenced by the levy. In the way of making the levy the date of the commencement of the suit, there are also insuperable obstacles. At the levy, there is no defendant; and a suit would then be without a defendant. If the levy be wrongful, the injured person is not bound to resort to a trial of the right of property. He has his common-law remedies, which he may prefer. The statutory action is, therefore, not even a necessary consequence of the levy.

Indeed, it is too clear to require any argument to demonstrate it, that the action cannot commence before the assertion of the claim, by making the affidavit and giving the bond prescribed; for those acts are indispensable, and without them the action can never be. It is also plain, that the suit commences when the bond and affidavit are given, and not afterwards. Then the parties have done the last act to be performed out of court. The bond and affidavit are transmitted to the proper court, and thereupon an issue is made up. The suit is thus initiated by the bond and affidavit, as it is in ordinary cases by summons and complaint. This is not only shown by the general plan or scheme of the law, but by a consideration of some of its distinct provisions. Upon the execution of the bond, the property taken in execution is

surrendered back into the possession from which it was taken. It cannot be that the law would thus arrest a creditor in the use of process for the collection of the debt, and take away from his reach the property, until he was protected by the actual pendency of the statutory suit, by which the bond might be available to him. Again, it cannot be that the death of the claimant, on the day after the date of the bond and affidavit, would deprive the plaintiff of his right to prosecute the statutory action. Yet that would be the result, unless the suit is commenced with the making of the bond and affidavit; for there could be no revivor against the representatives of one who was dead before the suit was commenced.

On the same point it may be further said, that the language of the statute clearly shows that the claim is interposed when the bond and affidavit are made, and the claim to damages thereby released.—Code, § 2594. It would present a singular inconsistency, if the law should hold that the claimant made his election, and waived his right of suit against the sheriff, before the statutory suit for determining his claim was instituted. This question was indirectly passed upon in Wiswall v. Glidden, 4 Ala. 357, and it is inferrible from the opinion that the court regarded the suit as pending from the interposition of the claim, and each party as having the right to ask that it should be docketed.

Upon the reasoning and authorities above adduced, we feel compelled to dissent from the ingenious and elaborate argument for the appellant, and hold, consistently with what has been the uniform practice, that the statutory action is commenced when the bond and affidavit are given, and that subpœnas for witnesses might issue, and depositions be taken before the term of the court next succeeding the interposition of the claim.

From that conclusion it is a necessary sequence, that it is the act of the claimant which gives a commencement to the suit. Indeed, this court said in Wiswall v. Glidden, supra, that the suit was originated by the act of the claimant, thus deciding the question. Of this act by the claimant the plaintiff is entitled to no notification; and it would

be, as we think we have already shown, a monstrous proposition, that the claimant could, in his absence and without his knowledge, initiate a suit, to which he would stand in the attitude of a party plaintiff, and afterwards obtain a dismissal of the suit because security for costs was not given before the suit was commenced.

[2.] It is true that, under the statute which was in force before the adoption of the Code, it was decided, that the plaintiff, in this form of action, might be required to give security for costs.—Jacott v. Hobson, 11 Ala. 434. But that statute was altogether different from the section of the Code upon the same subject. ' It provided merely that non-resident plaintiffs might be required to give security for costs upon sixty days notice. The principle, that the carrying into the Code a pre-existing statute is a legislative adoption of its previous construction, is, therefore, not in point.

Trials of the right of property are clearly not within the letter of the section of the Code, and to hold it within its equity would, as we think we have shown, have the sanction of neither precedent, reason nor justice. There was no error in the refusal of the court to sustain the motions made, because security for costs was not given before the commencement of the suit.

[3.] The portions of the answer of the witness, James McAdams, to the 5th, 7th and 9th interrogatories, and to the 2d and 4th cross-interrogatories, which were excluded, were mere declarations, properly classed as hearsay, unless, perhaps, the first portion of the excluded part of the answer to the 7th interrogatory should be excepted. But if this last named portion was admissible, we cannot pronounce that the court erred in excluding it, unless it had been offered separately from the illegal evidence with which it is connected, and that was not done.—See the cases collected in Shepherd's Digest, 596, § 170. The part of the answer to the 5th interrogatory, which was excluded, did not state a conversation which was a part of the *res gestæ*. It neither accompanied, nor is shown to have been so near the transaction as to constitute a part of it. It could only be a part of the *res gestæ* upon the

supposition, that everything said by the parties in reference to it afterwards on the same day must, of necessity, be a part of the transaction.

In the two cases of Olds v. Powell, 9 Ala. 861, and Gillespie v. Burleson, 28 Ala. 551, the question before the court was, whether a gift or loan of a slave was made by a father-in-law to his son-in-law. There was no question of fraud. In those cases, and in reference to that question, it was decided, that antecedent declarations of the donor, made when the gift was under consideration and discussion by the donor, and made in reference to it, and in contemplation of it, and explanatory of the donor's intention, were admissible. This principle has no application, which can be perceived, to the question of the admissibility of the part of the answer (which was excluded) to the 4th cross-interrogatory. That answer was simply that the witness had heard the claimant and defendant in execution speak of a trade which was on hand for the transfer of the negroes in controversy, on the morning before they were transferred by the latter to the former. This evidence was clearly mere hearsay, and does not fall, as counsel suppose, within the principle above stated.

The judgment of the court below is affirmed.

STONE, J., having been of counsel, did not sit in this case.