# Starnes *v.* Allen, West & Co.

## *Trial of Right of Property.*

1. *Trial of right of property; proof of outstanding title in stranger; rule as to, extent of* —While it is true that in the statutory action of the trial of the right of property, the claimant will not be permitted to defeat a recovery by the plaintiffs by proving outstanding title in a stranger, this rule extends only to cases where the plaintiff has made out a *prima facie* case, and the claimant has no privity of estate with the person whose title is set up. It does not overturn the statutory rule that the burden of proof is on the plaintiff in execution.

2. *Same; what proper form of issue in.*—The proper issue in this action is, an affirmation on the part of the plaintiff that the property in question is subject to his execution or attachment, and a denial of that fact by the defendant; and unless the plaintiff proves *prima facie*, at least, a title in the defendant, he must fail though the claimant shows no title to the property in question. Lien, right, or even title in the plaintiff, gives no right to condemn the property under the execution or attachment.

3. *Attachment; what not subject to.*—The interest of the landlord in the crops grown on the rented premises, by reason of his lien for rent and advances, is not such a title or interest as can be levied upon under execution or attachment.

APPEAL from Mobile Circuit Court.

Tried before Hon. H. T. TOULMIN.

Allen, West & Co., the appellees, commenced suit against one Hibbler by attachment, which was levied, among other things, on the cotton in controversy; whereupon, the appellant Starnes, made the statutory affidavit and bond to try the right of property.

On the trial, it appeared that Hibbler, who owned part and had rented part of a plantation in Sumter county, had re-rented it to certain negroes for a stated number of bales of cotton, no matter what number were produced on the place; that the negroes were in possession of the premises, cultivating them under the contract of renting above set out, and had received from Hibbler supplies and advances, for which they still owed him. The sheriff levied the attachment sued out by Allen, West & Co. against Hibbler on the crops growing on the place and worked by the negroes under the contract above set out.

Being advised that the levy of the attachment was void, Starnes, who had made advances to Hibbler early in December, 1876, purchased of Hibbler his claims against the negroes on the place, taking a transfer of them to himself and informing the negroes of his purchase, and they turned the cotton over to him in payment of the rent and advances. There was evidence tending to show that Starnes went with the sheriff and was present when the levy was made on the crops, and that he agreed with the sheriff to superintend the gathering and delivery of the cotton. Starnes, however, testified that he never considered himself the bailee of the sheriff, and that he agreed to look after the place only for the purpose of protecting his own interest, and as a matter of friendship to Hibbler and the officer levying the attachment. It also appeared that most of the cotton was in his possession when he purchased the claims of Hibbler against the negroes. Hibbler, the defendant in attachment, testified that he and his brother owned, as tenants in common, the lands on which the cotton levied on was grown; that he had rented his brother's interest for 1876, and relet the place to the negroes on it for a stated number of bales of cotton, looking to his landlord's lien for rent and advances for his protection, and that the only interest he had in the crops was that of landlord, and that the negroes were not employed by him. About the middle of December, one Cobbs, as the attorney of Allen,

[Starnes v. Allen, West & Co.]

West & Co., bought from the negroes on the place all their interest in the crops levied on, and on the trial he offered in evidence the receipt given by them for the money thus paid. The claimant objected to its introduction on the ground of irrelevancy, but his objection was overruled, and he excepted. Cobbs was introduced as a witness, and testified that after the levy was made, he, in company with a deputy sheriff, went to the plantation and had a conversation with the negroes; that they told him that every thing on the place belonged to Mr. Hibbler, and that they owed him for rent and advances, and that they were not entitled to any thing until he was paid, and that they did not know how they stood with him; that they only claimed to be paid for the work done in gathering the crop for the sheriff, and the balance, if any, due them upon a settlement with Hibbler, and they agreed to accept in full of all their claims the amount shown to have been paid them by the receipt.

Plaintiffs then offered to read in evidence certain letters of Hibbler to Allen, West & Co., which Hibbler testified he had written. These letters were written by Hibbler to Allen, West & Co. in the course of general business, and several of them refer to cotton grown or to be grown on and shipped from the place in Sumter county, Ala. Hibbler testified that in his allusion to this cotton, he only meant that he could control the shipment of it. The letters were objected to, the objections overruled and claimant excepted. This was, in substance, all the evidence. The court, of its own motion, then charged the jury as follows: "The plaintiff sued out the attachment against Hibbler, and among other things levied on the cotton in question as Hibbler's. The claimant, Starnes, comes forward and interposes a claim to the cotton, alleging that it is his. To this allegation of Starnes, the plaintiffs say that the cotton levied on was the property of Hibbler and liable to the attachment, and hence was not the property of Starnes. This is the issue we are trying." This charge was excepted to by the claimant. The court further charged the jury, that "if the negroes, when the sheriff levied the attachment, admitted that the cotton belonged to Hibbler and surrendered the cotton to the sheriff as his property, who thereupon took possession and control of it, they (the negroes) are estopped to deny the title of Hibbler, or to claim the cotton against the plaintiffs or the officer who was acting under the process." This part of the charge is marked "5," and was excepted to by the claimant.

The court further charged the jury, that "if the persons who cultivated the lands and produced the cotton, and who had the possession of it, represented to the officer, or the plain-

tiff's agent, that the cotton was the property of Hibbler, in which they had an interest, and they made such representations with the knowledge of the facts, and with the intention that the person to whom they were made should act upon them, and such person was influenced by them and acted upon them, and the levy was made under these circumstances, then the persons who made such representations are estopped from setting up any claim to any part of said cotton; and if you find they have been paid for such interest in accordance with any agreement made with them at the time of the levy, then they were thereafter and are now estopped from setting up any such claim. Under this state of facts, if you find them so, the negroes would be estopped from contradicting their admissions or setting up in themselves a title to the cotton, which existed, if at all, previous to the surrender to the sheriff. If you find the negroes are estopped, and you find that Starnes, the claimant, afterwards derived and claims title from and under the negroes, then he is also bound by the same estoppel, and he can not now set up title in himself; and unless he can set up title in himself, your verdict must be for the plaintiffs. To this charge (numbered 6) claimant excepted.

The claimant then requested the court in writing to give the following charges:

"1. The plaintiffs in this cause can condemn the cotton levied on, only on the ground that it belonged to Hibbler at the time of the levy; therefore, if the jury believe, from the evidence, that the cotton belonged to other persons at the time of the levy, and the plaintiffs afterwards purchased the same from such other persons, then the plaintiffs can not in this case, rely on or be entitled to a verdict by reason of any title thus gained.

"2. The right of the plaintiffs in this action, if under the evidence they have any, is to condemn said cotton as the property of Hibbler, and no title acquired by them from any other person subsequent to the levy, can be looked to by the jury in determining whether plaintiffs are entitled to a verdict or not. Each of these charges the court refused, and the claimant separately excepted. The various rulings of the court, to which exceptions were reserved, are now assigned as error.

BARRY & BRAME, COOKE & LITTLE, and WATTS & SONS, for appellant.—A trial of the right of property is an action or suit in which the plaintiff in execution is the actor and the claimant is defendant.—5 Ala. 531; 11 Ala. 434; 34 Ala. 478. Hibbler's interest in the property was that of a landlord

holding a lien for rent and advances. Such interest is not subject to attachment.—8 Ala. 73; 2 Ala. 808; 35 Ala. 668; 52 Ala. 123. The admission of the evidence of the purchase from the negroes, was clearly inadmissible. The title, if any, acquired by this purchase, was subsequent to the levy, and the sole question to be tried was, whether the cotton, at the time of the levy, was the property of Hibbler, and as such subject to the attachment. The charges of the court ignore this plain proposition, and assert in broad terms that a title acquired from third persons, subsequent to the levy, can be made the basis of a recovery in this action. This was clearly erroneous.

D. P. BESTOR, *contra.*—The letters of Hibbler to Allen, West & Co. were properly admitted. Starnes claimed through a pretended sale from Hibbler, of his claims against the negroes, and his admissions were properly evidence against Starnes. The issue is correctly stated in the charge of the court. The court had a discretion in directing the form of the issue.—5 Ala. 770. The statements of the negroes estopped them from setting up any claim to the cotton, and Starnes, who had no other claim except what he acquired from the negroes, after they had asserted to the sheriff that all the cotton belonged to Hibbler, except the claim which they subsequently sold to plaintiffs, certainly had no title at all; and hence he could not recover, and the issue must necessarily be for the plaintiffs.—1 Brick. Dig. 480, § 67; 2 Brick. Dig. 402, §§ 10, 14, 16.

STONE, J.—It is true that in a trial of right of property, under the statute, the claimant can not defeat plaintiff's recovery by proving outstanding title in a stranger.—*Foster v. Smith*, 16 Ala. 192; 2 Brick. Dig. 480, § 67. This principle, however, hath this extent: When plaintiff in execution makes out a *prima facie* case, the claimant will not be allowed to overturn it by proving title in a stranger, with whose title he does not connect himself by privity of estate. It does not overturn the statutory rule, that "the burthen of proof is on the plaintiff in execution."—Code of 1876, § 3343. It has long been settled in this State, that in trials of right of property, a statutory suit which has been classed as *sui generis*, the proper issue is "an affirmation on the part of the plaintiff that the property in question is subject to his execution, and a denial of that fact by the defendant."—Code of 1876, § 3342; 2 Brick. Dig. 478–9, §§ 48, 49, 51, 52. See, also, *McAdams v. Beard & Henderson*, 34 Ala. 478, 481.

The form, and only proper form, to be observed in framing

[Starnes v. Allen, West & Co.]

the issue, requires the plaintiff in execution "to allege that the property levied on is the property of the defendant in execution [or attachment], and liable to its satisfaction."— Code of 1876, §§ 3342, 3290. The leading, fundamental fact is, that the property seized belongs to the defendant, by a title which renders it liable to levy and sale under the process. Possession in the defendant is *prima facie* evidence of such ownership, and in the absence of other proof, would require a condemnation of the property. In just such case as this, that other principle comes in, namely : that plaintiff, having thus shown a *prima facie* case of liability, the claimant will not be permitted to rebut that *prima facie* case by proving title in a stranger. But, until the plaintiff in execution proves title in the defendant, or makes proof of such *prima facie* title, it is immaterial whether claimant has title or not. The plaintiff must fail, not because claimant has shown a title in himself, but because plaintiff has failed to prove the essential, indispensable fact of such ownership in the defendant, as renders the property liable for the satisfaction of the debt; and that ownership or title must be such that, under our statutes, it is subject to seizure and sale under execution against such defendant in execution. The levy and averment of liability assert two propositions : that defendant in execution is indebted to the plaintiff, and that the goods seized are the property of the defendant, and as such liable to the payment of his debt. Lien, right, or even title to the goods, in plaintiff, not only does not strengthen his right to condemn them under execution or attachment, but their tendency is in the opposite direction.—See *Boswell v. Carlisle*, at December term, 1876 ; *Dent v. Smith*, 15 Ala. 286 ; *Powell v. Williams*, 14 Ala. 476 ; *Barker v. Bell*, 37 Ala. 354.

The testimony of Talbot Hibbler, if believed, tends to show that his claim to the cotton, and only claim, consisted in a landlord's lien for rent and for advances. This is not such a title or interest as can be levied upon under execution or attachment. It gave to Hibbler no right to take possession of the crop, without delivery by or permission from the tenants.—*Folmar & Sons v. Copeland & Brantley*, at the present term. The tenants were only debtors to Hibbler, and the latter had but a lien on the crop for the security of his claim, if his version of the transaction be the true one.

Under the rules above laid down, there are many rulings in this record which must work its reversal. The following evidence was improperly admitted : First, the written memorandum of sale made by the tenants to Allen, West & Co.,

dated 21st December, 1876; second, the letters from Talbot Hibbler to Allen, West & Co.

As to the charge of the court, there is no question of estoppel that affects the issue in this cause. The statement of the issue before the jury, found in the first paragraph of the general charge, does not sufficiently show that the onus was on the plaintiff to make out his case. Charges numbered 5 and 6, of the general series, should not have been given. Charges Nos. 2 and 3, of those requested by plaintiff, are not in harmony with the principles laid down above, and the court erred in giving them. The two charges asked by claimant should have been given. Each asserts a correct legal principle.

Reversed and remanded.