## OLDS v. POWELL.

1. Property sent home with a new married couple, will be presumed to be a gift, unless at the time a less estate is declared, or limited. Whether such a transaction is a gift, or a mere loan, is a question of intention ; any fact therefore, which affords evidence of such intention, is admissible as a part of the *res gestæ.*

2. A declaration by the parent at or about the time, is evidence of his intention, though made in the absence of the son-in-law ; a declaration made previously, or act done, upon the marriage of another daughter, as to his intention in respect to his future sons-in-law, is not admissible in evidence.

3. When, upon the taking of a deposition, a witness is examined in chief upon matter not admissible in evidence, the opposite party may conditionally cross examine the witness upon the same subject, and if the examination in chief is rejected, the cross examination will share the same fate. The cross examination as to other matters would be admissible.

4. When a commission to take a deposition does not contain the time, and place, at which it is to be taken, but the commissioner sends enclosed with the deposition, a written notice, which does set forth the time and place, and which is attached to the deposition ; if he certifies, that pursuant to, or by authority derived from, the enclosed commission, he took the deposition, it will be evidence *prima facie,* that the deposition was taken pursuant to the notice.

Error to the Circuit Court of Dallas.

DETINUE for a slave, by the defendant, against the plaintiff in error, and judgment for plaintiff below.

Upon the trial, as appears by the bill of exceptions, the evidence showed, that in August, 1841, the defendant intermarried with the daughter of the plaintiff, and that the negro in question, with two others, were sent by the plaintiff to the defendant's house, in January after, about the time of his first going to house keeping; and the question was, whether this negro was given to the defendant, or his wife, without qualification, or whether it was a loan, with a view to a subsequent settlement of the same, upon the daughter and her issue.

To sustain his cause, the plaintiff was permitted to prove, against the objection of the defendant, that he had not given his two other sons-in-law, any property upon their marriage, but had settled some upon their wives, and their issue. Also,

that the plaintiff at the time of making such settlement, stated his reasons for doing so, and his intention in regard to his other daughters, that it might otherwise be taken for the debts of his sons-in-law, and therefore he did not intend to give any property to his sons-in-law. This was said before the marriage of the defendant, not in his presence; nor was there any evidence that it had ever been communicated to him; to all which the plaintiff excepted.

The defendant showed; by the testimony of the tax collector, that in 1841, when the plaintiff gave in his taxable property, he gave in three negroes less, than he had done the year before, and gave as his reason, that he had given, or let, the defendant have three of his slaves—this was after the marriage, and then offered to prove by the tax collector, that he paid the taxes for the negroes that year; which the Court refused, and he excepted.

The plaintiff offered to read the depositions of certain witnesses, all taken under a commission. The commission did not mention the place, where it was to be executed, but the notice of the time and place of its execution, which was served upon the defendant's counsel, and which was attached to, and returned with the commission, stated, that the commission was to be executed at the house of Mrs. Oliver, in Lowndes county; but there was no evidence, and no certificate of the commissioner, to show where it was executed. The defendant's counsel objected to it for this cause, but the Court overruled the objection, and he excepted.

Plaintiff also offered in evidence the deposition of Francis Powell, the answers to the direct examination, being as follows: "Father said, that he would send the negroes down, but the boy Daniel, he should take back; that he was a family negro, and had a wife at home. He said this to Mr. Olds, in the presence of his wife. I think Mr. Olds said, very well. Father clothed the negroes till they were demanded. *Sister asked mother, if her father was going to make the property over to her. Mother told her, yes. Sister said, very well. Father told sister, that if the girl Susan did not suit her, she could return her and take another girl, Nancy.* I think the negroes were sent to Mr. Olds' four or five months after the marriage. Father said he would purchase other negroes,

and put in the place of those negroes which he intended to entail; he did not intend them as a gift to Mr. Olds. This was the last conversation father had with Mr. Olds, before the negroes were sent. Mr. Olds was not at father's house any more, until after the negroes were sent." The defendant's counsel moved the Court to exclude from the jury, all that portion of the deposition in italics, which the Court refused, and he excepted.

The plaintiff also offered the deposition of Mrs. Gilmer, and on motion of the defendant, the Court rejected the direct examination, except the words, *Mrs. Olds was married in August*, 1840, but admitted the cross examination, to which the defendant excepted.

The deed of settlement from the plaintiff to Mrs. Gilmer and her issue, was in evidence.

EDWARDS, for the plaintiff in error, contended, that it was not competent to prove the declaration of the father-in law, anterior to the alledged gifts, unless such declarations had been made in the presence of the defendant, or communicated to him. [Story on Con. 162; 9 Wheaton, 581; 1 Starkie, 63–4; 2 Id. 223; 1 Nott & McCord, 224; 1 Sewart, 24.]

The deposition was improperly admitted, as the commissioner did not certify when it was taken, and there was no cross examination.

The Court also erred in permitting the cross examination to be read, after the examination in chief had been rejected.

R. SAFFOLD, contra. The declarations of the father, at the time of the gift, were clearly admissible. And for the same reason, any declarations made at, or about that time, were competent evidence, to show the intent of the donor. [1 Nott & McCord, 221; 1 Dev. Eq. 55; 16 Pick. 22.]

The declarations of the father, in regard to his future intentions as to all his sons-in-law, were admissible, as a declaration *ante litem motum*. [11 Pick. 30S, 362, 469; 1 Metcalf, 242; 3 Id. 199; 2 N. Car. Reports 432; 5 Carr. & P. 133; 14 S. & R. 275; 5 H. & J. 86–97; 2 Hill's Rep. 248, 257; 2 Spears, 75; 16 Mass. 108.]

The fact, that defendant paid taxes for the property, was correctly excluded, because he was liable for the taxes as

bailee. He further contended, that the deposition was sufficiently authenticated to show, that it had been taken pursuant to the commission, and notice.

ORMOND, J.—When property is sent home with a new married couple, by the parents, it will be presumed to be a gift, unless at the time a less estate is declared, or limited. Whether it be a gift, or mere loan, is a question of intention; any fact therefore, which affords evidence of such intention, is admissible as part of the *res gestæ.*

It is not easy to conceive of any more conclusive mode of ascertaining the intention, than by the ·declarations of the donor, at, or about the time ; and this is not strenuously denied by the counsel for the plaintiff in error, but he insists that the donee is not affected by such declarations limiting the estate, unless made in his presence, or at least, unless a knowledge of them, is brought home to him. This objection, is founded upon a ˈmisapprehension of the true nature of such contracts as this.

It is true, that in every contract the assent of the minds of both parties is necessary to its consummation ; but in the case of a donation, whether of the entire interest, or of a less estate, the assent of the donee is presumed ; as he is the party to be benefited. He is passive, the donor acts; to the acts of the donor we must look therefore, to ascertain its true characacter; and it is wholly unimportant, whether the donee is present, or not, at the time of the declaration, or act, which manifests the character of the donation.

It must be very rare, that in such cases, the real nature of the transaction would not be understood, although there was no actual communication, between the father-in-law, and son-in-law ; but if any doubt did exist, it would be the duty of the latter, to inquire and ascertain its nature. [See Banks v. Hatton, 1 Nott & McCord, 221 ; Nichols v. Edwards, 16 Pick. 62 ; Collin v. Pope, 1 Dev. Eq. 55.]

It is a cardinal principle of the law of evidence, that the testimony must be confined to the issue between the parties, otherwise it is irrelevant, and may lead the jury astray. Testimony to be admissible, must relate to, and be connected with, the transaction it is offered to elucidate, and this connection

must be immediate, and not remote, or far fetched. Thus, in this case, what the plaintiff said, or did, when he portioned his other daughters, is not competent testimony to establish the true character of this transaction; as the acts were distant from each other, in point of time, and have no necessary connection with each other.

Of the same description, are the declarations of the plaintiff in relation to his future conduct, in regard to the marriage portion of his other daughters. Surely, a more unsafe criterion could not be devised, by which to determine the character of an act, than the declarations of the party as to what it should be, made years before. These were not facts attending, or surrounding the transaction, and were therefore inadmissible as evidence.

There are doubtless, cases, where the declarations of a party made years before the act done, are admitted in evidence to prove the intention of the party to do the act, as in cases of disputed testamentary dispositions. Such evidence is admitted upon a different principle, and is not strictly evidence of the act itself, but to prove, either the capacity, or intention, to do the particular act, from the fact, that an intention to do such act, had been cherished for such a length of time. In such cases there is no controversy about the act itself; here the very fact in dispute, is, what is the true nature of the act. We are therefore clear in the opinion, that the evidence of the previous acts, and declarations of the plaintiff as to his future conduct, anterior to this transaction, and not connected with it, were improperly admitted in evidence.

The fact, that the defendant paid taxes on the slaves, did not tend in the slightest degree, to eviscerate the point in issue, which was not, whether the defendant supposed he was the owner of the slaves, but whether the plaintiff made an absolute, or qualified gift of them, to him or his wife. In addition, the act was equivocal in its nature, as it would have been his duty to pay the taxes, if entitled only to the use of the slaves; the testimony was therefore properly excluded.

We think the Court did not err, in refusing to exclude the direct examination of Mrs. Powell. The reason assigned in the Court below, and here, is, that it does not appear that the defendant was present. We think the fair inference from the

Old v. Powell.

deposition is, that the defendant was present, but whether he was, or was not, the testimony was proper. It consisted of the declarations of the father, as to the interest he intended to give his daughter in the slaves, which, as already stated, was competent testimony, to establish the character of the donation, being made at, or about the time, the negroes were being sent home to the new married couple.

It appears, that from some cause, which is not disclosed, the direct examination of Mrs. Gilmer, a witness for the plaintiff, whose deposition had been taken, was excluded, but the Court permitted the cross examination to be read as evidence. The objection, whatever it was, did not go to the entire deposition, but only to the examination in chief, and we are not able to perceive any good reason for excluding the cross examination. If the examination in chief, was excluded, because the subject matter of the examination was inadmissible, we think the cross examination would share the same fate; otherwise great injustice might be done, as the party against whom the deposition was taken, could not know in advance, whether the examination in chief would be received or not, and might therefore cross examine the witness, conditionally ; and so far as he confined himself to the objectionable matter brought out upon the direct examination, he would not be bound by it, if the direct examination was not admitted. We have not sufficient information, from the record, to enable us to determine, whether the Court erred or not, and as the cause must be sent back on another point, it is unimportant, except, as it regards the future action of the Court.

The depositions were also objected to, because it did not appear from the certificate of the commissioner, that they were taken, at the time, and place, at which the opposite party had been notified to attend. The commission, it appears, did not require the deposition to be taken at any particular place, but the notice which pointed out the time and place, was inclosed by the commissioner, and sent with the deposition to the Court. What the precise language of the certificate was, we are not informed. If it certified, that in pursuance to, or by authority derived from, the commission, (to which it appears the notice was attached,) the deposition was taken, we think under the previous decisions of this Court, it would be sufficient evi-

83

dence, at least *prima fucie*, that the deposition was taken according to the notice. This ought to be presumed, until some proof is made creating a doubt of its correctness, when the deposition should be suppressed, unless shown by proof *aliunde* to have been taken at the proper time and place.

For the error of the Court as shown in this opinion, the judgment must be reversed, and the cause remanded.