## POWELL v. OLDS.

1. The declaration of a father-ln-law, made during the interval which elapsed, between the marriage of his daughter, and her leaving his house with her husband, to commence housekeeping, explaining the nature of the title he intended to make to slaves, which his daughter was to take as her portion, are competent evidence to show, what title he intended his son-in-law should have in them. Declarations must afterwards would not be evidence for him.

2. The court cannot exclude the testimony of a witness, because in the opinion of the court, he denies on his cross-examiuation, what he had sworn to upon the examination in chief.

3. No demand is necessary in trover, where the defendant had employed a slave for some time previous to the suit, in the ordinary domestic avocations, and upon the trial asserts a title in himself.

Powell v. Olds.

Error to the Circuit Court of Dallas.

TROVER, by the defendant, against the plaintiff in error, for a negro girl.

From a bill of exceptions, it appears, that the plaintiff intermarried with the defendant's daughter, in August, 1840, and about the last of January, 1841, went to housekeeping, about which time the defendant sent to their new residence, three slaves, Daniel, Susan and Amanda, the last only being in controversy. The slaves remained with the plaintiff until August, 1841, when the girl accompanied the wife of plaintiff to her father's house, where she died, and the girl, Amanda, has since remainded in possession of defendant.

The plaintiff contended that the slave was an absolute gift, whilst the defendant maintained they were loaned to him until he could make a settlement of them, or others, upon his daughter, to her separate use.

The defendant offered the deposition of a witness, his daughter, who deposed, that before the boy Daniel was sent to plaintiff, she heard her father say he did not intend to part with him—that he had lent the boy Daniel to Mrs. Olds, until he could put another in his place—that he intended him for her—that he had not entailed the negroes, because he intended to put others in their place, as these were family negroes, at which time he intended to entail them. He said she was not to keep Daniel, but to keep Susan, if she liked her. He told witness when he entailed property on her, that he intended to dispose of all his property in the same way, and she must not think hard of it. Heard him say this before Mrs. Olds, was married, and afterwards Mrs Olds told witness that her father had given her choice of Susan and Nancy, and she would take Susan on trial until Christmas, and if she did not like her return her, and take Nancy. Heard her mother tell Daniel to return at a certain time and get his clothes. This constituting a part of the deposition of the witness was on motion of plaintiff rejected.

Another daughter of defendant deposed, that she heard her father say, before and after the negroes were sent, the reason he did not entail them, was, that he did not intend to give them

away. Heard Mrs. Olds say, that what property her father gave her, he intended to entail. This was also excluded.

The defendant to discredit a witness of the plaintiff, who had been examined on a former trial, relating to this transaction, called witnesses to prove, that he had testified differently on the previous occasion, viz : that on the former trial, he had not said, that the defendant, in declaring to the plaintiff the terms on which he would send the negroes, stated, that he intended to entail them, or settle them on his daughter. To support the witness, the defendant called one of the jurors who had sat upon the former trial, who testified, that to the best of his recollection, in substance, the testimony of the witness was the same on both trials. On cross-examination, he admitted he could not say positively, that the witness did use the language referred to, on the former trial. That he was confident such evidence was given, but whether by the witness or some other, he could not say, nor could he say, that any other witness had used the language. The court, on motion, excluded the juror's testimony.

The defendant offered to prove, by Seymour Powell, that a short time after the negroes were sent to the defendant, the witness applied to him, to procure the boy Daniel, which defendant refused, and said he did not intend Olds and wife, or any one else should have him. Also, that after the marriage, but three or four months before the negroes were sent home, defendant declared, that he did not intend to give property absolutely, to any of his sons-in-law, but intended to settle it on his daughters. This was also excluded.

The defendant then offered to prove, by Abraham Powell, that about the 25th December, 1840, he handed witness a deed, in which he had settled property to the separate use of a married daughter, and directed witness to make a copy of the deed, with a view of settling the property he indended for Mrs. Olds, in the same manner, and that defendant then so declared to witness his intention. On motion of plaintiff, the court refused to permit the testimony to go to the jury, upon the ground, that the declaration was not sufficiently near the time of sending the negroes, and defendant excepted.

There was no evidence of a demand and refusal to deliver the slave, but it was in proof, that the defendant employed her in picking out cotton, and other domestic employments,

from Mrs. Olds death until this suit was commenced. The defendant moved the court to charge, that these facts were not sufficient to establish a conversion, without a demand and refusal, which charge the court refused, and charged, that these facts, if proved, would dispense with the necessity of proof of a demand, to which the defendant excepted.

These matters are now assigned as error.

R. SAFFOLD, for plaintiff in error.

EDWARDS, contra, cited, 7 Ala. 652; 8 Pick. 165; 24 Id. 35, 242; 4 Id. 378; 1 Phil. Ev. 231; 2 Id. 154, 157, 585; 11 S. & R. 320; 1 Starkie Ev. 47, 50.]

ORMOND, J.—We think the decision made by this court in Olds v. Powell, 7 Ala. 652, determines most, if not all the questions of evidence raised upon this record. That case, and this, arise out of the same transaction. In both, the question is, what did the father intend, when the slaves were sent home to the son-in-law? Did he design to make an absolute, or a qualified gift? To ascertain this fact, it was decided, *that the declarations of the father-in-law, at, or about the time,* explanatory of his intention, was competent testimony. It was not intended to limit the period of making these declarations, to the precise point of time when the slaves were sent. It would generally happen in such cases as the present, that some discussion would be had in the family, before the property was lent, or given. When the property consisted of slaves, it is reasonable to suppose, that the wishes of the child would to some extent be consulted, as they would generally have a preference.

Such appears to have; been the case here what negroes the son-in-law was to have, and the nature of the title he was to get to them, appears to have been fully discussed in the family, in the interval between the marriage in August, 1840, and the succeeding January, when the plaintiff and his wife commenced housekeeping. The declarations therefore of the father, during this interval, explaining the nature of the title he intended to give, made in reference to the loan or gift of these slave to the plaintiff, or his wife, would be

competent evidence of his intention. What he said afterwards, when the act was consummated, was not competent evidence for him, as he could not then alter, limit, or change the title he had made.

The deposition of Mrs. Gilmer, the first witness, was properly rejected, as it appears to relate, so far as it is pertinent, to a period anterior to the marriage; as where she speaks of what her father said when she received her own portion; and to a time subsequent to the delivery of the slaves, when she states the reason her father gave, why "he had not entailed them." This appears to point to a time subsequent to the delivery, and was properly rejected.

That portion of Frances Powell's deposition which relates to the defendant's declarations before the negroes were sent, should have been admitted—what she states of what he said after they were sent, does not vitiate the previous part, which evidently points to declarations after the marriage, and relates to this particular slave, and the character of the title the plaintiff was to get, when she was sent.

The deposition of Seymour Powell, for reasons already given, was properly excluded; it does not appear that the declarations were in relation to these slaves.

The evidence of Abner Powell falls within the rules here laid down. The conversation with defendant, deposed to, was in relation to these slaves, and to the nature of the title the defendant intended to make to them, to the plaintiff. It was some time after the marriage, being the latter part of the year 1840, and but a short time before the slaves were actually sent home to the plaintiff; it was therefore competent testimony of the intention of the defendant, to give the plaintiff a qualified, and not an absolute right to the slaves.

In reference to all these declarations of intention, prior to the actual delivery, it is proper to remark, that they are weaker in proportion as they recede from the time of the delivery, and will be entirely valueless, if at the time of the delivery, a contrary intention was expressed, or if from any other fact attending the transaction, it could be presumed the intention previously formed, had been abandoned.

The court erred in excluding the testimony of the juror, called to sustain the witness, whose credit had been im-

peached. The admissions made by him on the cross-exami-
nation, may have shown to the jury, that his recollection of
what transpired on the trial, was too imperfect to be relied
on ; but that was a matter which the court could not deter-
mine. It was peculiarly the province of the jury to decide,
what weight his testimony was entitled to, in support of the
witness.

The facts proved, were doubtless quite sufficient to estab-
lish a conversion of the slave. The employment of her by
the defendant for such a length of time, in the ordinary avo-
cations of a domestic, and as part of his own household, is
quite sufficient to require explanation from him, showing
why he retained the possession. Instead of which we find
he is now asserting title to the slave, and denying that the
plaintiff ever had any right to her. In such a case, as it is
clear a demand would have been met by a refusal, no de-
mand is necessary.

Let the judgment be reversed, and the cause remanded.