## OLDS v. POWELL.

1. If in the testimony of a witness taken by deposition, there is an ambiguity, it is the duty of the other party, on the cross-examination, to ask such

Olds v. Powell.

questions as would clear up the supposed difficulty. If he does not, he cannot have the deposition rejected for uncertainty.

2. That is not matter of opinion, a knowledge of which may be derived from the declarations of others. And in such case, it is the duty of the opposite party, if dissatisfied with the answer, to inquire into the source of the knowledge of the witness.

3. A witness called to impeach another witness, swore, that on a former trial the witness had sworn differently. On his cross-examination, he admitted he had taken a memorandum of what the witness swore to on the former trial, at the time, which he said was correct, as far as it went. The memorandum being handed to the opposite counsel, he contended that it was substantially different from what the witness then swore to; and insisted that it should go to the jury as a part of his testimony : Held, that the memorandum might have been looked to by the witness himself, for the purpose of refreshing his memory of the facts—or that it might be used by the opposite party as a written declaration by the witness of the facts, for the purpose of impeaching his recollection; but that it was not an instrument of evidence, and therefore improper to go to the jury.

Error to the Circuit Court of Dallas.

DETINUE by the defendant in error, against the plaintiff in error, to recover a female slave named Susan.

Upon the trial of the cause it appeared, that the defendant had intermarried with the daughter of the plaintiff, and that the slave in question, with two others, were sent home to the defendant, about the 25th January, 1841, when he commenced housekeeping ; and the question was, whether this was an absolute, or only a qualified gift of the slaves. To prove that it was the latter, the plaintiff offered to read the deposition of Frances Powell, and the defendant objected to the following portion : " Sister asked mother, if her father was going to make the property over to her; mother told her yes ; sister said very well,"—on the ground that this conversation did not appear to be in the presence of the father, or of the defendant, or when the same took place.

The defendant also objected to the following portion of the direct examination of Mrs. Gilmer, taken by deposition : " I heard father say, that he did not intend the boy Daniel for my sister, but that he would put another in the place of him.

Father stated the reason he did not give my sister Mary her property, he did not intend that property for her, except Susan, which she could keep if she liked her, if she kept Susan she was to be entailed." Also, the following words in the cross-examination. " Father said, he intended to entail on Mrs. Olds her property, and that he never would give property to his daughters in any other way," upon the ground that as the direct examination was illegal, this was also—and for the additional reason that the witness was permitted to speak of the knowledge of the defendant's wife, and her willingness to take the property on the terms offered.

To attack the credibility of one of the defendant's witnesses, the plaintiff introduced a witness, who swore that the testimony of the witness on this, was different from what it was on a former trial of this cause, and stating in what it differed. Upon cross-examination, he admitted that he had taken a note, or memorandum of the testimony of the witness, at the time it was given, which he stated was correct as far it went, but he had not referred to it in giving in his testimony. The memorandum being then handed to the defendant's counsel, he contended it was substantially different from the testimony then given by the witness, and moved the court, that the memorandum go to the jury, with the evidence, and as a part of the testimony of the witness; which being objected to, the court excluded the memorandum from the jury. The defendant excepted to the action of the court as here set forth, and now assigns it as error.

HUNTER, for the plaintiff in error.

The errors assigned are confined to matters appearing from the bills of exceptions, and they present the following questions :

1. Was there error in admitting the bond as evidence of possession? Probably not, and therefore the assignment is not insisted on.

2. Was there error in admitting and refusing to exclude the words objected to in the deposition of Frances Powell? There was—for they are mere declarations of third persons, and would not be evidence unless it appeared affir-

*matively* and *clearly*, that they were made in the presence of at least one of the parties—and this does not appear.

3. Did the court err in admitting and refusing to exclude the first sentence of Mrs. Gilmer's deposition? Yes—it is the declaration of the party himself, which could only be rendered competent by showing that it was made in the presence of the other party, or at or about the time he parted with the slave; neither of which appear. There is nothing whatever to show when the declaration was made. [See Innerarity v. Beirne, 8 Porter, 176; Crenshaw v. Davenport and wife, 6 Ala. R. 390.]

4. Was there error in admitting and refusing to exclude the declarations of the father, which form the subject of the 5th assignment of errors?

It is believed so most clearly, on the same ground as those next preceding.

5. The same questions as the two next preceding, founded on the matter of the 6th assignment of error.

6. Did the court err in admitting and refusing to exclude the words in the 7th assignment of error?

We think so—and that for many reasons, these words were inadmissible—the witness states *a conclusion*, "sister knew" —gives her *mere opinion*, and that too as to the *feelings, or mental state of another*, "I think she was willing;" and the matter is as objectionable as the *form*—it cannot be contended that the fact that the party's wife *knew* and was *willing*, would charge him, unless connected with evidence bringing the fact home to him—and there is no such connecting evidence. Nor does it appear when she knew, and why *willing* —it may have been before the marriage, or after the slaves were sent. On this point see Olds v. Powell, 7 Ala. R. 652; Planters' and Merchants' Bank v. Borland, 5 Ala. R. 531.

7. Was the court right in refusing to permit memorandum in writing of witness Thomason to go to the jury?

No—for, first, it was the *best evidence*, so far as it went, and, second, it was the *statement of the witness as to the matter he was testifying about, made at another time*, as to which he had been questioned, and clearly good to contradict him, or show that he was mistaken. See Lewis v. Post & Main,

1 Ala. Rep. N. S. 65, which is precisely in point. [3 Stark. Ev. 1742, *et seq.*]

Evans and R. Saffold, contra, insisted on the following points :

1. The nature and object of the delivery bond implies a voluntary and solemn admission on the part of the defendant, giving it, that he is in possession of, and claims title to the property. If such was not the effect of the bond given in this case, it was incumbent on defendant to show the same, by his bill of exceptions. This has not been done. The bond was proper evidence of the fact for which it was offered. [Clay's Dig. 317, § 31, 32.]

2. All the declarations of the father, H. Powell, respecting the intended gift to his daughter, Mrs. O., appear expressly, or by fair legal intendment, to have been made after the marriage of his daughter, and before the negroes were sent; and such, by well established principles, were proper evidence of the nature and terms of the gift or loan. [Olds v. Powell, 7 Ala. Rep. 652, and authorities there referred to.]

3. Permitting the deed settling property on the other daughter, to be read to the jury, under the requisition of the defendant below, for the limited and qualified purpose for which it was done, and under the special instructions of the court, to this effect, given at the time, was the most proper, and only practicable mode of disclosing the declarations of the father, and the intention with which the slaves were to be sent. It was perfectly consistent with the principles of the *former* decisions relating to the same controversy, and the general rules of evidence.

4. Every thing will be presumed in favor of the judgment of the court below, which is not inconsistent with the statements contained in the bill of exceptions. Broadall v. Speed, 1 Marsh. R. 106.]

5. Objections to testimony, as to competency, should be made at the time of taking the deposition, if the party attend and cross-examine. [2 Cowen & Hill's Notes to Phil. Ev. 256, note 131.]

If hearsay be received without objection at the time, it is

too late to object afterwards.   [2 Ib. 563, note 432; State v. Borden, 1 Dev. 518.]

As to cross-examination, see 2 Phillips, (C. & H.] 732.

In our chancery practice, (Ch. Rules, § 38, Clay's Dig.) exceptions to testimony must be taken before the register.

As to Thomason's testimony, see 2 Phil. (C. & H.) 550, note 221.

Interrogatories annexed to a commission to take a deposition, must be objected to, if at all, before the commission is sent, and the objection noted, but then the court will make no decision as to them, before the commission is returned. [2 Pick. 165.]   (Anon.)

ORMOND, J.—When this case was here previously, (reported in 7 Ala. 652, and 9 Id. 861,) we held, that the declarations of the father in law, made at or about the time the slaves were sent home, to the son in law, were evidence of his intention as to the character of the estate intended to be created, and that proof of such declarations at any period between the time of the marriage and sending home the slaves, was competent.

The objection to Miss Powell's deposition, or to the part objected to, is, that it does not appear the declarations were. made in the presence of the parties; and to Mrs. Gilmer's, that it does not appear when the conversation there deposed to, was had.   We think it does sufficiently appear from the context, taking the entire deposition into view, that the objections are untenable.   But there is another decisive answer to this objection.   If the depositions are ambiguous, it was the duty of the party, on the cross examination, to ask such questions as would clear up the supposed difficulty.   He cannot be permitted to stand silently by, when by a question he could have removed all doubt, and on the trial reject the deposition for uncertainty.

The witness also stated, that her sister *knew*, of her father's intention to make a qualified gift of the slaves, and she thought her sister was *willing* to receive them in that way : it is now insisted that this testimony was illegal, and comes within the principle of the P. & M. Bank v. Borland, 5 Ala. 531, and other subsequent cases, where it has been held, that

a witness could not swear to the motives or intentions of others. We do not think the testimony open to this objection. The witness may have been able to swear to her sister's knowledge of the fact, from being present when it was communicated to her, as in a previous part of the deposition she states she was, and to her willingness to receive the property on the terms offered by the father, from her declarations at the time. These are clearly facts which may be the subject of evidence, and are not like the cases cited, an attempt to give evidence of the secret purpose of the mind. If the opposite party desired to know the source of the witness' knowledge, he should have brought it out on the cross examination.

Neither did the court err in refusing to permit the jury, to take the memorandum made by the witness Thomason, of what another witness, he was called to impeach, had sworn to on a previous trial. The memorandum, which it appears he made, might have been looked to by him, for the purpose of refreshing his memory of the facts there stated, but after such inspection, he must have been able to swear, that he recollected what took place at the trial, without relying on the memorandum. The only purpose which the memorandum could subserve, was to revive a forgotten train of thought, by the mention of a fact, or incident, which had occurred, and which when brought before the mind, would bring with it, the other facts with which it had been originally associated— a process of the mind with which every one is familiar. The memorandum itself, was not evidence for any purpose.

In this case it appears, the witness did not rely upon the memorandum to revive his recollection of the facts, but having stated upon the cross examination that he had made one, when the witness was examined, which was correct as far as it went, it was insisted that the memorandum should go to the jury with his testimony, and as a part of it. This was clearly improper. The only use which could have been made of it was to impeach his present recollection of the facts, by showing his previous, counter, written declaration of the same transaction, if there was any opposition between them. It was not in any sense, an instrument of evidence, and certainly was not a part of the testimony of the witness. It was

the right of the opposite party to use it, as a declaration of the witness, for the purpose of impeaching his recollection, as he appears to have done. He had no right to insist on its going to the jury, as an instrument of evidence.

Let the judgment be affirmed.