## GUNN, Trustee, vs. BARROW.

1. An understanding between a father and son-in-law, then recently married, that certain slaves delivered to the latter were intended for his wife, and would be secured by deed of trust for her and her children, repels the presumption of a gift to the son-in-law; and a deed afterwards executed, in pursuance of such intention, will as against him vest the legal title in the trustee.

2. Until the trusts of a deed are executed, the legal title continues in the trustee, and at law he may recover the property from the *cestui que trust*, unless the deed contains a stipulation that the possession shall remain with the latter.

Error to the Circuit Court of Chambers. Tried before the Hon. John J. Woodward.

This was an action of detinue, instituted by the plaintiff against the defendant in error, to recover four slaves. The plaintiff made title to the slaves under a deed of trust, the substance of which is stated in the opinion of the court. It appears that the slaves were owned by Larkin R. Gunn, and, soon after the marriage of the daughter of said Gunn to the defendant, and before the execution of the deed of trust, went into the possession of the latter, but it was in proof by the testimony of said Larkin R. Gunn and his wife, which was objected to by the defendant, that they went into the defendant's possession with the understanding that a deed of similar import to the one introduced in evidence was afterwards to be executed. There was also proof tending to show that some four months after the marriage, the defendant, with his wife and the slaves in controversy, went to reside at the house of Larkin R. Gunn, under an arrangement to crop together, but that they soon disagreed, and defendant removed from the residence of said Gunn, leaving the slaves in his possession, where they remained for several months, and then went back to the house of defendant. It was further shown, that before the slaves returned, as just stated, into the possession of the defendant, said Larkin R. Gunn said to him, in substance, that he intended to give the negroes to his daughter and her children, and intended to make a deed of gift to them, and that if he chose to take them in that way, he might do

so, otherwise he could not have them, and that the defendant agreed so to take them. It further appeared that the wife of the defendant was still living and that she had children. A number of charges were given, and several charges asked and refused by the court, the most material of which are substantially as follows: The court charged the jury—1st. That to entitle a plaintiff to recover in an action of detinue, he must have an absolute or special property in himself, and the right of possession ; that the legal title might be in the plaintiff, and *yet the defendant have the right of possession.* 2d. That the court did not distinctly recollect the testimony, but if it was that the donor intended to give the negroes to his daughter during her life, and afterwards to her children, and that in part performance of such intention he delivered the negroes to the defendant, then he could not afterwards convey them to the plaintiff so as to authorise him to recover in this action. The plaintiff's counsel asked the court to charge the jury—1st. That if the defendant received the negroes under the understanding that they were to be settled on his wife and children in the manner pursued by the deed, then the legal title is in the plaintiff: 2d. That if the property went into the defendant's possession as a loan or limited estate, then the legal title remained in the donor, and he had a perfect right to terminate the defendant's interest in the property at any time, and by the execution of the deed, the plaintiff acquired the legal right to the property, and that said legal right draws to it the right of possession,—both of which charges the court refused to give. To the charges given and to the refusal to charge as asked the plaintiff excepted, and now assigns them as error.

ALLISON & ANDREWS, for the plaintiff in error :

The evidence set out in the bill of exceptions clearly shows, that the slaves in controversy went into the possession of defendant, with the knowledge and understanding upon the part of defendant, that the slaves were to be settled by the donor (by deed thereafter to be executed) upon the wife and children of defendant, and in case of the death of the wife without children, to revert to the donor. This evidence was conclusive to show that the property was not given absolutely, as an advancement for the daughter, and did not thus vest *jure mariti* so as to become

subject to the husband's debts, or render inoperative any settlement of the property which the father might make afterwards. —O'Neal, Michaux and Thomas v. Teague, 8 Ala. 345.

Under the pleadings, and facts disclosed in the bill of exceptions, the first and second charges given by the court were erroneous. The action of detinue involves the title to the chattel, at the commencement of the suit, and the writ is a sufficient demand. If the defendant in this action relies upon the right to the possession of the property by way of lien or limited estate without claiming the absolute title in himself, he cannot set up such an interest as a defence under the plea of non detinet, but is bound to plead such matter specially.—1 Chitty's Plead., 488; Spence v. McMillan, 10 Ala. 584; 12 ib. 135.

The first and second charges asked and refused, should have been given, the first in particular, as under the state of facts disclosed by the bill of exceptions, it would have placed the case fairly before the jury.

R. BAUGH, for defendant.

1. The testimony of Larkin R. Gunn, the donor, should have been excluded. It is a general rule of evidence that if the effect of a witness' testimony will be to create or increase a fund in which he *may* be entitled to participate, he is incompetent.— 2 Cowen and Hill's Notes, Part 1, p. 114, note 108.

The case at bar is dissimilar to the case of O'Neal et al. v. Teague et al., 8 Ala. 345. In that case the contest was between execution creditors and the trustees, and the deed, under which the trustees claimed, vested a life estate in the negroes in the husband, and that estate was liable for the husband's debts, but the right of the donor to a reversion of the property was not disputed. In the case at bar, Barrow claims the property by virtue of a parol gift and delivery, and independent of any deed of trust, and denies that the donor had any interest in the slaves at the execution of the deed of trust. The declarations of the donor made at and a short time before giving the property to his daughter would have been competent, but the donor himself was an incompetent witness.—Powell v. Olds, 9 Ala. 861. The husband being incompetent his wife was also an incompetent witness.

The charges asked were properly refused, as they are abstract, independent of the testimony of the donor and his wife.

48

DARGAN, C. J.—This was an action, brought by the plaintiff against the defendant in error, to recover four slaves. Upon the trial a bill of exceptions was sealed by the presiding judge, which shows that the plaintiff, to prove title in himself, introduced a deed of trust, bearing date 24th day of January 1848, which was executed by Larkin R. Gunn, and which purported to convey the slaves in controversy to the plaintiff, upon the trusts that he would apply the proceeds arising from the work and employment of said slaves, to the support and maintenance of Nancy E. Barrow, during her natural life, and in the event that she should have a child or children, the said slaves and their increase, at her death, should descend to such child or children, in equal proportions; but if the said Nancy E. should die, leaving no children, then the slaves should revert to and become the property of the grantor, should he be then living, but if he should not be then in life, then the slaves should become the property of the brothers and sisters of the said Nancy E. Barrow. The deed then declared that it was the intention of the donor, that Nancy E. Barrow should have a life estate in the slaves for her own separate use, free from the charge or alienation of her husband, James H. Barrow, with remainder to the child or children of the said Nancy, and if she should die, leaving no child or children, then the remainder over as before designated. It was shown that Nancy E. Barrow, was the daughter of the grantor, and that, at the time of the intermarriage between her and the defendant, the slaves belonged to the donor. It also appeared that Nancy E. was still living and had children. It was also shown that the slaves went into the possession of the defendant before the execution of the deed, but it was proved by the testimony of the donor and his wife, that the defendant received the slaves with the understanding, that the donor should execute a deed of them of similar import to the one read in evidence. The defendant objected to the competency of the testimony of the donor and his wife, but his objection was overruled. The defendant introduced several witnesses, who testified that, after the slaves went into his possession, the donor stated that he had given the slaves to the defendant. This is the substance of the testimony that gives rise to the question, that must ultimately determine this case, and that is, whether the donor, at the time of executing the

deed, had the right to dispose of the property in the manner described therein?

If the property passed by the deed, it is then clear that the legal title vested in the plaintiff as trustee, and still remains in him, for the purpose of executing the trust, and at law, he must recover against any one, who withholds the possession from him. Even if we were to presume, that the husband's possession was that of the wife, or that he held the slaves for her, he could not resist a recovery; for so long as the legal title remains in the trustee, the trusts not being executed, he may recover at law against his own *cestui que trust*, unless the instrument, by which the trusts were created, contain a stipulation that the possession shall remain with the *cestui que trust*. We have said this much upon the supposition that the court was influenced in refusing some of the charges requested, by the idea that the possession of the husband must be considered as the possession of the wife, and that the trustee could not recover against her; but, so far as we can discover from the record, the defendant set up title in himself, irrespective of the right of his wife. In either aspect of the case, if the deed conveyed the title to the plaintiff, he was entitled to recover, for the trust not being executed, the legal title must still remain in him.

If the defendant received the possession of the slaves, with the understanding that the donor should execute a deed for them, similar in its character to the one introduced in evidence, then it is clear that the donor had the right to convey the slaves in the manner that he did, and the trustee would take the legal title.— O'Neal, Michaux et al v. Teague et al. 8 Ala. 345, It is true, that when property is sent home with a newly married couple by their parents, the law presumes it a gift by way of advancement in life, unless at the time a less estate or interest was intended; and this intention of the parent may be ascertained by his declarations, made at or about the time he parts with the possession, and if from them, or from any other legitimate proof, it is shown that the parent did not intend an absolute gift, then the presumption of law, that a gift was intended, is rebutted, and the married couple take only such an interest as it appears the parent intended they should.—Olds v. Powell, 7 Ala. 652; Powell v. Olds, 9 ib. 861; 8 ib. 345. We have said that this intention of the donor may be gathered from his declarations made at or about

the time he parts with the possession. This must not, however, be understood to include declarations made after he parts with the possession, for the law raises the presumption of a gift from ·the time of the delivery of possession, and then the title of the donor is presumed to be extinguished, and he cannot defeat the title he has created and regain his title by declarations subse-·quently made. This view of the law, applied to the evidence, and to the instructions prayed by the plaintiff, as well as those given, shows that the court erred, as the jury must have been impressed with the belief that the plaintiff could not recover, although the grantor had the right to convey the property in the manner that he did, at the time the deed was executed. Whether the grantor had this right or not, as the case is now presented, seems to us to be the only question involved, for if he had this right; if he had never parted with his title to the slaves until he made the deed, then the legal title is vested in the plaintiff, and there is nothing contained in the deed that would prevent him at law from recovering possession even against the *cestui que trust*. The judgment must be reversed and the cause remanded, and we do not deem it necessary to examine any other question, growing out of the assignment of errors, as the view we have taken will enable the court correctly to decide the case upon another trial. We will, however, remark that we cannot upon this writ of error examine the question, whether the donor and his wife are competent witnesses; they were permitted to testify against the objection of the defendant; the judgment is in his favor, and the writ of error is prosecuted by the plaintiff. The defendant cannot assign errors on this writ, and the question therefore is not before us.

Judgment reversed and cause remanded.