# Pilcher, *et al. v.* Smith.

## *Trover.*

(Decided April 18, 1912. 58 South. 672.)

1. *Evidence; Opinion; Ownership of Property.*—A witness may testify to the ownership of personal property as a fact, and on cross examination may be required to state the facts within his knowledge touching the ownership and thereby aid the jury to determine the value of his testimony.

2. *Same; Weight and Sufficiency.*—If the jury is satisfied that a witness has corruptly sworn falsely to a material fact, the jury may reject his entire testimony, or accept a part and reject the other.

3. *Same; Declaration While in Possession.*—On an issue of disputed ownership, the declarations of one in possession of personal property, made in good faith, explanatory of the character of his possession, and whether in his own right or for another, are admissible as part of the res gestae of the possession.

4. *Witnesses; Examination; Cross.*—Where, on direct examination the mortgagor testified that he owned the horse and mortgaged it to the bank, to secure a note, and on cross examination stated that the horse belonged to his wife, it was proper on re-direct examination to permit a question "and you went down to the bank and made a mortgage and got some money from the bank, did you not?" as the mortgage referred to in the question was the mortgage relied on by plaintiff as assignee.

5. *Trial; Exclusion of Evidence; Jury Question.*—The weight of testimony is for the jury, and it is not proper for the Court to exclude testimony of a witness given on direct examination because, in the opinion of the Court what the witness stated on direct examination was not proper to be relied upon.

6. *Torts; Persons Liable.*—Where one person co-operated with others to commit a tort, all concerned are liable to the party injured.

7. *Same.*—Several persons acting at different times, and in different ways may commit a joint wrong.

8. *Same.*—Where the original wrong was done for his benefit, or to advance his purpose, one may, by ratification, become a wrongdoer with others.

9. *Trover; Action; Evidence.*—The evidence in this case examined and held sufficient to justify a finding that the defendants participated in the conversion of the horse.

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PIERCE.

Action by A. J. Smith against G. W. Pilcher and others for the conversion of a horse. Judgment for plaintiff and defendants appeal. Affirmed.

ESPEY & FARMER, for appellant. No brief reached the Reporter.

BEN F. RIED, for appellee. No brief reached the Reporter.

DE GRAFFENRIED, J.—This was a suit in trover brought by the appellee against the appellants for the value of a horse. The plaintiff claimed title to the animal under a mortgage which was executed on the 16th day of January, 1909, by one Skipper, to the Dothan National Bank, to secure a note for $226.56, which became due on October 1, 1909, and which, before the alleged conversion, was assigned for value to appellee. The evidence further showed that there was due on the mortgage on the day of the alleged conversion over $200, and that the amount so due had not been paid at the time the case was tried.

The appellee, for the purpose of making out his case, placed the mortgagor, Skipper on the stand as a witness, and on his direct examination he testified, among other things, that he executed the mortgage, and "reckoned that he had in his possession a bay horse on which he gave a mortgage on that date; that at the time he owned a certain horse that was taken from his premises;" the defendants Eldridge and Charlie Coe got the horse and carried it away; that at that time defendant Coe was working for defendant Pilcher, and that Pilcher was at that time engaged in the livery business; that he could not recollect whether he sold that horse on that day to anybody; that at that time he

was owing George Pilcher, defendant, for some guano money borrowed from him; that he had sold the horse to defendant Pilcher; that he sent the horse to him; that he had made a trade with Eldridge before that time; that he thought Eldridge was to get the horse, and he thought Eldridge was to pay Pilcher for him. On his cross-examination this witness flatly contradicted substantially every word above quoted. He swore that the horse belonged to his wife, and had belonged to her ever since he came into its possession. He went into minute details as to how he had, by many successive trades, come into the possession of the horse as his wife's property, stating that "every time he traded for his wife," and that "every time he traded he traded his wife's property" for other property which, upon the consummation of the particular trade, became the property of the wife. He further testified that any statement which he had made indicating that the horse belonged to him, instead of his wife, had been made under the fear or threat of a criminal prosecution for mortgaging property not his own. In other words, the evidence of this witness, on his cross-examination, tended strongly to cast entire discredit upon the statement, made by him in his direct examination, that he owned the horse when he made the mortgage to the appellee. In fact, his cross-examination tended strongly to discredit everything to which he had testified on his direct examination. In addition to this, the wife of the witness Skipper corroborated him as to everything to which he testified on his cross-examination, and flatly contradicted everything to which he testified on his direct examination. The evidence showed without dispute that the defendants Coe and Eldridge certainly obtained the horse with knowledge of the existence of the appellee's mortgage, and that they were guilty of conversion, provided Skip-

per, and not his wife, owned the horse when the mortgage was executed. It is contended that under all of the evidence the wife of Skipper is shown, without contradiction, to have been the owner of the horse, and that, therefore, each of the defendants was entitled to the general charge in his behalf.

1. Ownership of personal property is a fact to which a witness may testify. On his cross-examination he may be required to state all of the facts within his knowledge touching such ownership for the purpose of aiding the jury in ascertaining the truth of his statements and the weight or value of his testimony. Such cross-examination may elicit facts and statements from the witness showing to the satisfaction of the jury that the witness was honestly mistaken in his testimony, given on his direct examination, as to the ownership of the property involved in the testimony, or that he did not, in fact, know to whom such property belonged, or that he was so utterly ignorant, unintelligent, or reckless of the truth that his testimony on the subject should be discarded altogether.—*Steiner Bros. & Co. v. Tramum,* 98 Ala. 315, 13 South. 365.

A court cannot, however, exclude the testimony of a witness, given on his direct examination, because he contradicts, on his cross-examination, the testimony so given, or shows, in the court's opinion, on such cross-examination, in some other way, that what he stated on his direct examination is not of sufficient value to be relied upon. The weight of the testimony of such a witness both on his direct and cross-examination is for the jury, and not for the court.—*Powell v. Olds,* 9 Ala. 861.

While it is true that, when the jury is satisfied that a witness has corruptly sworn falsely to one material fact, his entire testimony may be rejected, there is nothing in the law saying that the entire testimony of such

a witness must be rejected by the jury. The jury may accept as true a part of the testimony of such a witness, and reject the remainder. This case furnishes an apt illustration of this rule, and of the unquestioned power of the jury under such rule. The jury in returning a verdict for the appellee conclusively established the fact that they accepted as true the statement made by the mortgagor, on his direct examination, that he owned the horse, and rejected as untrue substantially all that he testified to with reference to the ownership of the horse on his cross-examination. In our opinion, therefore, under all of the evidence in the case, the court properly refused to charge the jury, at the written request of the defendants, that, if they believed ·the evidence, they should find for the defendants.·

2. One of the appellants, George W. Pilcher, separately requested the trial court, in writing, to charge the jury, that, if they believed the evidence, they should find a verdict in his favor. This testimony shows that Pilcher was not present when the horse was taken by the other two appellants from the premises of the mortgagor, and this charge was asked upon the theory that, although the evidence might justify the jury in returning a verdict against the two defendants (appellants here) who carried the horse away from the premises of the mortgagor, there was no evidence from which the jury had the right to infer that the defendant Pilcher participated in or was in any way connected with the alleged conversion.

It is a familiar proposition that, when one person commits a tort co-operating with others, all parties concerned therein are liable to the party injured.—*Ensley Co. v. Lewis*, 121 Ala. 94, 25 South. 729; 4 Mayfield's Dig., page 948 § 11.

[Pilcher et al v. Smith.]

It is also a familiar proposition that several persons, although acting at different times and in different ways, may commit a joint wrong, and that "a party may become, by ratification, a wrongdoer jointly with the others, if the original wrong was done for his benefit, or to advance some purpose of his own."—*Sparkman v. Swift*, 81 Ala. 231, 8 South. 160; 4 Mayfield's Dig., page 948, § 12.

In the present case, the appellee's mortgage was recorded long before the time of the alleged conversion, and operated as constructive notice to appellants of its existence. This appellant Pilcher also had a mortgage on the horse, which was introduced in evidence, and it is claimed that Pilcher's mortgage had precedence, in any way, of appellee's mortgage, or that it was not subordinate thereto. The mortgagor, as we have already stated, testified on his direct examination that "defendant Coe was working for Pilcher and Pilcher was at that time engaged in the livery business; that he could not recollect whether he sold that horse on that day to anybody; that at that time he was owing Pilcher for some guano and money borrowed from him; that he was in bed sick; that he had sold the horse to defendant Pilcher; that he sent the horse to him; that he had made a trade with Eldridge before that time. He thought that Eldridge was to get the horse, and he thought that Eldridge was to pay Pilcher for him." On his cross-examination this witness testified, among other things: "I sold Eldridge the horse and he agreed to give me a check for $100 on the Houston National Bank. I signed the check, and it was to go to defendant Pilcher to pay the debt. I mean to say that I sold defendant Eldridge the horse, and he give me a check on the Houston National Bank for the horse, and I indorsed the check, and gave it to defendant Coe, to turn over to Pilcher in set-

tlement of a debt that I owned Pilcher. Pilcher had a mortgage on the horse at that time." The evidence showed without dispute that the alleged conversion occurred on January 14, 1911, and the appellee introduced in evidence two receipts to the mortgagor signed by Pilcher, both dated January 14, 1911, one for $50 and the other for fifty dollars on account of note, Eldridge check." When we consider that on the 14th day of January, 1911, Coe, who was working for Pilcher, and Eldridge, appeared at the mortgagor's home and bought the horse for $100, that both appellee and Pilcher had a mortgage on the horse, that there was evidence tending to show that the purchase money for the horse was sent by the mortgagor to Pilcher, that Pilcher in the above receipts acknowledge that he received the exact amount paid for the horse on the day the horse was sold, and that one of the receipts says it was for Eldridge's check, and that the mortgagor testified on his direct examination as we have above quoted, it seems irresistible that there was evidence tending to show that Pilcher participated in the conversion, and was, in reality, the only party who profited by it.

It is true that the mere fact that Coe was working for Pilcher in some capacity at the time of the alleged conversion does not, considered alone, show that Coe had authority to bind Pilcher, but the fact that he went with Eldridge to the home of the mortgagor and was present and participated in the purchase of the animal, upon which his employer had a mortgage, and that the evidence tends to show that he carried the purchase price of the animal to Pilcher and that Pilcher kept the money, taken in connection with the other evidence in the case, renders the fact that Coe was in the employ of Pilcher at the time a material and significant circumstance. The court properly refused to charge the jury

that, if they believed the evidence, they should find for the appellant Pilcher.

3. It is contended by the appellants that the court committed reversible error in permitting counsel for appellee to ask the mortgagor, while on the stand as a witness, and in requiring him to answer, the following question: "And you went down to the bank and made a mortgage and got some money from the bank, did you not?" This question was asked on redirect examination. The witness had testified on his direct examination that he owned the horse, and on his cross-examination that his wife owned the horse. On redirect examination the appellee undertook to show that the witness was mistaken when he testified on his cross-examination that his wife owned the horse, and this question was asked for the purpose of showing that while in possession of the horse the witness, in giving a mortgage on him, did an act consistent with his statement, on his direct examination, that he owned the horse and inconsistent with his statement on his cross-examination that his wife owned the animal.

The acts and declarations of one in possession of personal property explanatory of the character of his possession, made or done in good faith, showing the capacity of his possession, whether in his own exclusive right or that he holds possesion for or under another, in an issue of disputed ownership, are always admissible as a part of the res gestæ of the possession.—*Humes v. O'Bryan & Washington,* 74 Ala. 64. It cannot be successfully denied that, when a person in possession of personal property offers a mortgage on such property to a bank as security for a loan of money, such party in possession of such property thereby declares such property to be his own ,and represents, in effect, that he holds the property as his own and not for another.

For the above reason, as well as for the reason that we think that it is fairly shown by the record that the mortgage referred to in the question was the. mortgage of the appellee which had been introduced in evidence, we are of the opinion that the court was free from error in permitting the question to be asked and in requiring the witness to answer it.

The above opinion expresses our views upon all the questions presented by this record. The judgment of the court below is affirmed.

Affirmed.